Terry HORNBECK, Appellant/Cross–Respondent,

v.

SPECTRA PAINTING, INC., Respondent/Cross–Appellant,

and

Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Respondent.

No. SC 92116.

Supreme Court of Missouri, En Banc.

July 31, 2012.

Charles W. Bobinette, Uthoff, Graeber, Bobinette & Blanke, St. Louis, for Hornbeck.

Michael P. McDonald Jr., Thompson & McDonald, St. Louis, for Spectra.

Karin Krohn Schute and Mary J. Sommers, Attorney General's Office, for Treasurer.

MARY R. RUSSELL, Judge.

This workers' compensation appeal raises the question of whether the 15–percent statutory violation penalty under section 287.120.4[1] applies to an employee's compensation award from the Second Injury Fund (SIF).[2] This Court finds that the section 287.120.4 penalty is inapplicable to the claimant's award from the SIF.

For the reasons explained below, the Labor and Industrial Relations Commission's decision in this case is affirmed as modified by this opinion.

## I. Background

Terry Hornbeck was employed by Spectra Painting, Inc., as a painter and drywall taper. He suffered a work-related accident in November 2006 when he fell 10 feet from a ladder onto a concrete surface. The ladder from which he fell was on a makeshift scaffolding platform. After his fall, Hornbeck was taken to the emergency room with complaints of pain in his feet, legs, back, and left shoulder. No structural abnormalities were diagnosed, and he was released from the hospital the same afternoon as his fall. In the coming months, he visited three physicians provided by Spectra. Because none of those

---

[1] All references in this opinion to section 287.120 are to RSMo Supp.2011, which provides the version of the statute applicable to this case. Section 287.120.4 provides: "Where the injury is caused by the failure of the employer to comply with any statute in this state or any lawful order of the division or the commission, the compensation and death benefit provided for under this chapter shall be increased fifteen percent."

[2] The SIF is provided by section 287.220, RSMo 2000. All further references to this statute are to RSMo 2000.

physicians diagnosed a physical cause for his continued discomfort and pain, he was released in April 2007 to return to work.

In October 2007, still complaining of pain, Hornbeck utilized his own insurance to obtain additional medical care.

Seeking additional compensation for his ongoing medical treatments, Hornbeck moved in January 2008 for a hearing before an administrative law judge (ALJ) pursuant to section 287.203.[3] He sought payment for his unpaid medical expenses, additional temporary total disability (TTD) benefits, and attorneys' fees and costs. He also alleged that his work injury resulted from Spectra's violation of the scaffolding act[4] and sought application of the 15–percent statutory violation penalty under section 287.120.4.

The ALJ's findings included that, from November 2006 to April 2007, Spectra had paid Hornbeck $32,801.15 in medical expenses and $16,754.88 in TTD benefits. Spectra also had paid him a $7,000 indemnity credit against any further liability in the case. The ALJ determined that Hornbeck was not entitled to further payments for his unpaid medical expenses or future medical treatments. He found that Hornbeck had reached maximum medical improvement (MMI) for his work-related injury on April 24, 2007. The ALJ refused to award Hornbeck the additional benefits he sought in his petition because he found that Hornbeck's "treatment undertaken and medical expenses incurred [after his April 2007 MMI date] [were] unrelated to [his work-related] injury."

The ALJ concluded that Hornbeck's 2006 work injury caused him to suffer permanent partial disability (PPD) of 20 percent of his left bicep, 5 percent for each of his feet, and 2.5 percent of his total body as a whole for lower back pain. He found that Hornbeck's injuries warranted application of a 5–percent multiplicity factor. He also indicated that Hornbeck was entitled to 42.4 weeks of PPD compensation from the SIF.

The ALJ further determined that Spectra had not violated the scaffolding act, such that the 15–percent penalty under section 287.120.4 was not applicable to enhance Hornbeck's award. Although Hornbeck sought attorneys' fees and costs based on an itemized fee petition, the ALJ found that his requested fees and costs were not warranted. Instead, the ALJ awarded expenses and a 25–percent attorneys' fees award.

Hornbeck sought review of the ALJ's decision by the Labor and Industrial Relations Commission (Commission).

## II. The Commission's Findings

As he had in his case presented to the ALJ, Hornbeck largely premised his case before the Commission on testimony by his osteopathic physician, Dr. Volarich, who had started treating him in March 2008.[5]

---

3. Section 287.203, RSMo Supp.2011, provides the version of this statute applicable to this case.

4. The scaffolding act is outlined in section 292.090, RSMo 2000. This statute provides:
 All scaffolds or structures used in or for the erection, repairing or taking down of any kind of building shall be well and safely supported, and of sufficient width, and so secured as to insure the safety of persons working thereon, or passing under or about the same, against the falling therein, or the falling of such materials or articles as may be used, placed or deposited thereon. All persons engaged in the erection, repairing or taking down of any kind of building shall exercise due caution and care so as to prevent injury or accident to those at work or nearby.

5. Dr. Volarich testified that Hornbeck presented the following injuries: his right and left shoulders were impinged; his left bicep

The Commission also examined Hornbeck's treatment records from three physicians who had treated him beginning in October 2007,[6] as well as the treatment records from Hornbeck's Spectra-provided physicians who had treated him after his initial complaints of pain and discomfort.[7] In deciding Hornbeck's case, the Commission expressly found that the medical opinions of the Spectra-provided physicians were more credible than the opinions offered by Dr. Volarich. The Commission affirmed the ALJ's decision to deny Hornbeck's requests for additional medical benefits after concluding that Hornbeck had "failed to demonstrate that [his work-related injury in November 2006] was the prevailing factor resulting in a medical condition that warranted treatment after [he had reached MMI in] April 2007." [8]

The Commission's decision highlighted its disagreement with the standards of proof that it believed that the ALJ had applied, and it sought to clarify the appropriate standards for determining the issue of medical causation. The Commission also expressly found that TTD benefits had not been underpaid to Hornbeck, which was an issue that the ALJ had not reached. The Commission approved and affirmed the attorneys' fees and costs that had been awarded by the ALJ.

Contrary to the ALJ, however, the Commission found in favor of Hornbeck that Spectra had violated the scaffolding act and was required to pay the 15–percent penalty under section 287.120.4. The Commission indicated that the 15–percent penalty applied to the compensation awards entered by the ALJ. Hornbeck and Spectra both appeal the Commission's decision.[9]

### III. Standard of Review

On appeal, this Court reviews the Commission's decision to determine if it is sup-

---

tendon was torn; both of his feet had plantar fasciitis and tissue damage; he had a narrowing L5–S1 spinal disc space and his pre-existing asymptomatic degenerative disc disease became symptomatic as a result of his 2006 work injury. Dr. Volarich opined that Hornbeck was permanently and totally disabled.

6. Dr. Rummel was Hornbeck's orthopedic surgeon related to his shoulder, Dr. Martin was his orthopedic surgeon specializing in foot and ankle care, and Dr. Graven was his orthopedic surgeon focused on evaluating his spine and back pain.

7. The Commission expressly found most credible the opinions of Drs. Paletta, Chabot, and Aubuchon. Dr. Paletta, an orthopedic surgeon, treated Hornbeck within one week of his fall. Dr. Paletta found no abnormalities or injuries correlated with Hornbeck's complaints about his back, legs, and feet. She recommended non-surgical treatment for a ruptured bicep tendon, and at the conclusion of treatment in April 2007 she assigned a 5 percent PPD rating to Hornbeck's left shoulder. Dr. Chabot, an orthopedic spine surgeon, opined that Hornbeck's complaints exceeded his physical findings. He assigned a 2

percent PPD rating to Hornbeck's lower back and released him to work duties in April 2007. Dr. Aubuchon, an orthopedic surgeon specializing in foot and ankle care, ordered Hornbeck to utilize orthotics and physical therapy. Hornbeck stated that the treatment did not improve his condition, and Dr. Aubuchon released him from his care in April 2007. He assigned Hornbeck a 3 percent PPD rating for each of his heels.

8. With one dissenting vote, the Commission affirmed the ALJ's findings as they were supplemented and modified by the Commission's decision. The dissenting commissioner expressed that, contrary to the majority, he found that Dr. Volarich's testimony was persuasive. The dissenting commissioner opined that Hornbeck had not yet reached MMI and reasoned that his award should be kept open until a final award could be made.

9. This Court has jurisdiction over these appeals pursuant to MO. Const. art. V, sec. 10, as the case was taken on transfer after disposition by the court of appeals.

ported by competent and substantial evidence upon the whole record. Mo. Const. article V, sec. 18. Section 287.495.1 provides in relevant part:

Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

■■ Nothing requires this Court to review the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the Commission's decision. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). The whole record is considered to determine if there is sufficient competent and substantial evidence to support the Commission's award. *Id.* A reviewing court considers whether the Commission "could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it." *See Wood v. Wagner Elec. Corp.*, 355 Mo. 670, 197 S.W.2d 647, 649 (1946).

■ This Court defers to the Commission's factual findings and recognizes that it is the Commission's function to determine credibility of witnesses. *CNW Foods, Inc. v. Davidson*, 141 S.W.3d 100, 102 (Mo.App.2004). This Court "may not substitute its judgment on the evidence," and when the "evidence before an administrative body would warrant either of two opposed findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding." *Pulitzer Pub. Co. v. Labor & Indus. Relations Comm'n*, 596 S.W.2d 413, 417 (Mo. banc 1980).

## IV. Arguments on Appeal

Both Hornbeck and Spectra appeal regarding the Commission's imposition of the 15–percent penalty to be applied under section 287.120.4 for violating the scaffolding act.[10] The parties maintain that the Commission did not articulate clearly what categories of compensation payable to Hornbeck would be enhanced by the 15–percent penalty, and they request that this Court clarify the applicable penalty amounts.

Hornbeck further argues that the Commission erred in entering a final PPD award because it misapplied the law and made findings contrary to the overwhelming weight of the evidence when it agreed with the ALJ's determinations that he had reached MMI in April 2007. He asserts that the Commission wrongly determined that he had failed to prove that his medical treatments and claimed disabilities after April 2007 were related to his compensable November 2006 work injury. He also

---

**10.** Spectra argued to the court of appeals that the Commission's decision wrongly awarded Hornbeck the 15–percent enhancement for violation of the scaffolding act. Spectra, however, did not appeal that issue to this Court, and its previous argument that it did

not owe the 15–percent penalty under section 287.120.4 now is deemed abandoned. The only question remaining in Spectra's appeal is what amount of monies should be enhanced by application of the 15–percent penalty.

maintains that he should have been awarded his requested attorneys' fees and costs because Spectra unreasonably denied him additional benefits. He further contends that the Commission wrongly refused to award him past due medical expenses, interest, and future medical expenses.

## A. Application of the Section 287.120.4 Penalty

■ This case presents an issue of first impression regarding the application of the 15–percent penalty under section

11. Spectra's arguments highlight the vagueness of the Commission's section 287.120.4 penalty decision, and it urges this Court to clarify how the penalty should be applied. In addition to his arguments urging enhancement of his SIF award, Hornbeck also asserts that the Commission erred in applying the 15–percent enhancement penalty under section 287.120.4 because it wrongly limited the application of the penalty to the "compensation as awarded by the [ALJ]." He contends that the 15–percent penalty should be applied broadly to enhance all the monies he was awarded, including the monies that Spectra awarded him under chapter 287 in the form of TTD compensation and medical benefits paid separate from the ALJ's award and the $7,000 indemnity credit that Spectra had paid him.

There is no reason for this Court to explore these arguments, however, because Spectra's counsel conceded at oral arguments that, if the penalty is owed, it should apply to the compensation monies that Spectra voluntarily paid to Hornbeck before the Commission's decision.

12. Section 287.220.1 provides in relevant part:

All cases of permanent disability where there has been previous disability shall be compensated as herein provided. Compensation shall be computed on the basis of the average earnings at the time of the last injury. If any employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee be-

287.120.4—which in this case is payable for Spectra's violation of the scaffolding act— to an award from the SIF. Hornbeck maintains that the penalty is applicable to his SIF award, and Spectra contends that the penalty cannot be applied to enhance a SIF award.[11]

■ The purpose of the SIF is to compensate an employee when his work-related injury combines with a preexisting disability and causes a greater disability than the work-injury alone would have caused. As laid out in section 287.220.1,[12]

comes unemployed, and the preexisting permanent partial disability, if a body as a whole injury, equals a minimum of fifty weeks of compensation or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, according to the medical standards that are used in determining such compensation, receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree or percentage of disability, in an amount equal to a minimum of fifty weeks compensation, if a body as a whole injury or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability. After the compensation liability of the employer for the last injury, considered alone, has been determined by an administrative law judge or the commission, the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the last injury was sustained shall then be determined by that administrative law judge or by the commission and the degree or percentage of disability which existed prior to the last injury plus the disability resulting from the last injury, if any, considered alone, shall be deducted from the combined disability, and

the SIF "provides for fund liability if the preexisting disability and the combined effect of it and the new injury are each of such seriousness that they are a hindrance or obstacle to employment." *Pierson v. Treasurer of State*, 126 S.W.3d 386, 388–89 (Mo. banc 2004). When the SIF statute is applicable, the employer is liable only for the amount of disability caused by the employee's current injury, and the SIF fund is liable for "the amount of the increase in disability caused by the synergistic effect of the two injuries." *Id.* at 389. Therefore, the SIF provides a protection for employers in hiring an employee who has a pre-existing disability.

Because the award issued to Hornbeck from the SIF is intended to reflect his preexisting condition, not the injury caused by his work with Spectra, it would be inappropriate to order Spectra to pay a penalty on that award. In effect, imposing a penalty on the SIF award would force Spectra to provide compensation based on Hornbeck's disability over which it had no control, which would be contrary to the purpose of the SIF. Application of the section 287.120.4 penalty to SIF awards might discourage employers from hiring a worker who has a preexisting disability for fear of greater liability.

To the extent that the Commission's decision was vague in its application of the section 287.120.4 penalty, this Court clarifies that the penalty is inapplicable to the award that Hornbeck received from the SIF.

## B. Additional Benefit Claims

Hornbeck further presents a number of arguments that the Commission misapplied the law and made improper findings when it affirmed the ALJ's determinations that he was not entitled to additional compensation benefits for his medical treatments and claimed disabilities after the April 2007 MMI date decided by the ALJ. Essentially, he contends that the overwhelming weight of the evidence shows that he required medical treatment after April 2007 that related to his November 2006 work injury. He asserts that the Commission applied the wrong standards for assessing his claims, and he urges that he is entitled to attorneys' fees and costs beyond the amounts awarded by the ALJ.

In the interest of readability and efficiency, this Court has consolidated its considerations of Hornbeck's numerous subpoints to his first argument, as many of his allegations of error overlap.

### 1. Witness Credibility Determinations

Hornbeck asserts throughout his brief that the Commission erred in not finding credible his medical expert, Dr. Volarich. He argues that, when assessing the necessity for medical treatments after the April 2007 MMI date entered by the

---

compensation for the balance, if any, shall be paid out of a special fund known as the second injury fund, hereinafter provided for. If the previous disability or disabilities, whether from compensable injury or otherwise, and the last injury together result in total and permanent disability, the minimum standards under this subsection for a body as a whole injury or a major extremity injury shall not apply and the employer at the time of the last injury shall be liable only for the disability resulting from the last injury considered alone and of itself; except that if the compensation for which the employer at the time of the last injury is liable is less than the compensation provided in this chapter for permanent total disability, then in addition to the compensation for which the employer is liable and after the completion of payment of the compensation by the employer, the employee shall be paid the remainder of the compensation that would be due for permanent total disability under section 287.200 out of a special fund known as the "Second Injury Fund"....

ALJ, the Commission wrongly credited the evidence from the Spectra-provided physicians over the evidence provided by Dr. Volarich.

 Despite Hornbeck's numerous arguments advancing the reliability of Dr. Volarich's testimony, this Court refuses to engage in reassessing the credibility of the evidence presented in this case. Whether to accept conflicting medical opinions is a fact issue for the Commission, and this Court defers to the Commission's decisions relating to the credibility of witnesses and the weight given to testimony. *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286, 288 (Mo. banc 1995). The Commission's findings are not disturbed unless they are unsupported by competent and substantial evidence on the whole record. MO. CONST. art. V, sec. 18. The Commission's decision to disbelieve Dr. Volarich's testimony was well within its authority, and nothing requires this Court to reverse this case to force the Commission to re-evaluate Dr. Volarich's testimony and view it differently.

### 2. Acceptance of the MMI Date Entered by the ALJ

At the heart of Hornbeck's complaints about the Commission's failure to accept Dr. Volarich's testimony is his belief that the Commission wrongly refused to rely on Dr. Volarich's opinion that Hornbeck had not yet reached MMI as of the April 2007 date decided by the ALJ. This argument, however, is not persuasive because it was the Commission's prerogative to discount Dr. Volarich's MMI testimony in favor of the three physicians whose medical opinions supported that Hornbeck reached MMI in April 2007. This issue presents a matter of witness credibility and the

weight to be given to conflicting evidence, and this Court must give deference to the Commission's findings. *See Johnson*, 911 S.W.2d at 288. Despite Hornbeck's lengthy recounting of the facts presented in his case, this Court is not persuaded that there was not substantial and competent evidence on the whole record on which the Commission could affirm the April 2007 MMI date that was accepted by the ALJ.

### 3. Medical Causation Determinations

 Hornbeck argues that this Court should reverse the Commission's decision that he was not entitled to additional benefits for his treatments after April 2007 because he had not demonstrated that his November 2006 work injury was the "prevailing factor" in causing his medical condition requiring those treatments.

The Commission's decision incorporated the following statements concerning a "prevailing factor" assessment:

> The appropriate standard of proof for medical causation is found at [section] 287.020.3(1)[, RSMo Supp.2005]: "An injury by accident is compensable only if the accident was the **prevailing factor** [13] in causing both the resulting medical condition and disability." We agree [with Hornbeck] that the [ALJ's] failure to identify or cite appropriate standard of proof raises the question of whether the appropriate standard was applied.
>
> Our supplemental opinion on the issue of medical causation … is intended to clarify the issue and to make clear that the appropriate standard of proof has been applied to [Hornbeck's] claim. We affirm the [ALJ's award] because we conclude that [Hornbeck] failed to dem-

**13.** Bolded emphasis has been added to the Commission's language and its quotations of the statutory provisions.

onstrate that the work injury was the **prevailing factor** resulting in a medical condition that warranted treatment after April 2007.

In discussing the medical causation standards for Hornbeck's case, the Commission also incorporated additional "prevailing factor" language:

> Employer's termination of treatment and [TTD] benefits are vigorously disputed in this case. The parties agree that employee sustained compensable injuries when he fell from a scaffold in the course of his duties. . . . The key issue is the nature and extent of the medical condition and disability resulting from that accident. "Injury" and "accident" are defined by [section] 287.020 RSMo. Section 287.020.3(1) RSMo defines "injury" as an injury that arises out of and in the course of employment:
>
> > In this chapter the term "injury" is hereby defined to be an injury which has arisen out of and in the course of employment. An injury by accident is compensable only if the accident was the **prevailing factor** in causing both the resulting medical condition and disability. **"The prevailing factor"** is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability.

If an injury by accident is compensable under the Workers' Compensation Law, we look to [section] 287.140.1 RSMo [14] to determine employer's liability to provide treatment for the injury:

> In addition to all other compensation paid to the employee under this section, the employee shall receive and the employer shall provide such medical . . . treatment . . . as may reasonably be required after the injury or

disability, to cure and relieve from the effects of the injury.

Given the language of the foregoing sections, [Hornbeck's] burden is to show that [his work-related fall in November 2006] was the **prevailing factor** causing a resulting medical condition and disability for which treatment was reasonably required *after* April 24, 2007 (the date on which [Spectra's] treating doctors found [Hornbeck] to have reached [MMI] ). In support of his claim, [Hornbeck] offers the testimony of Dr. David Volarich, who performed an independent medical examination. . . .

. . . .

Although we disagree with the comments and rationale of the administrative law judge for discounting the opinion of Dr. Volarich, we do agree that the opinion of Dr. Volarich does not provide a convincing basis for the award sought by [Hornbeck].

. . . .

We find Drs. Chabot, Paletta, and Aubuchon more credible than Dr. Volarich. We conclude that the work injury of November 9, 2006, was not the **prevailing factor** causing a resulting medical condition and disability for which treatment was reasonably required after April 24, 2007.

Citing *Tillotson v. St. Joseph Medical Center,* 347 S.W.3d 511 (Mo.App.2011), Hornbeck argues that the Commission's application of a "prevailing factor" standard in his case was improper. He argues that *Tillotson* provides that his claims for additional treatments after April 2007 were supported so long as he could prove that the treatments flowed from his compensable work injury. *See Tillotson,* 347

---

**14.** All references in this opinion to section 287.140 are to RSMo Supp.2011, which pro- vides the version of the statute applicable to this case.

S.W.3d at 519 (explaining that "in determining whether medical treatment is 'reasonably required' to cure or relieve a compensable injury, it is immaterial that the treatment may have been required because of the complication of pre-existing conditions, or that the treatment will benefit both the compensable injury and a pre-existing condition;" and stating that "once it is determined that there has been a compensable accident, a claimant need only prove that the need for treatment and medication flow from the work injury" and "[t]he fact that the medication or treatment may also benefit a non-compensable or earlier injury or condition is irrelevant").

*Tillotson* reversed a Commission decision denying workers' compensation benefits to a claimant who had a total knee replacement surgery for which her employer refused to pay because it contended the surgery was most related to a preexisting arthritis condition and not to the employee's compensable work-related injury. 347 S.W.3d at 517. The claimant there argued to the Commission that "section 287.140.1 guarantees an injured worker the right to medical treatment reasonably necessary to cure and relieve the effects of a compensable injury and does not require a finding that a work place accident was the prevailing factor in causing the need for particular medical treatment." *Id.* Her employer, however, argued that "section 287.140.1 [includes] the requirement that a compensable injury is the prevailing factor in requiring particular medical treatment" before the treatment is compensable in workers' compensation. *Id.* The court agreed with the claimant. *Id.*

*Tillotson* articulated that there is a "material distinction between determining whether a compensable injury has occurred and determining the medical treat-ment required to be provided to treat a compensable injury." *Id.* It stated:

> That distinction is framed by section 287.120.1 which ... requires two independent inquiries. First, it must be determined whether an employee has suffered a compensable injury 'by accident arising out of and in the course of employee's employment.' Section 287.120.1. Second, *if* a compensable injury has been sustained by an employee, the appropriate compensation to be furnished must be determined. [Section 287.120.1].

*Id.*

The court found that when the "prevailing factor" test was met for determining that there was a compensable injury at issue in the case, there was no need for the Commission to additionally apply a "prevailing factor" assessment in determining the compensability of the medical treatments for which the claimant sought compensation. *See id.* at 517–18. It opined:

> Section 287.140.1 makes no reference to a "prevailing factor" test and, as previously noted, presumes of necessity that the presence of a compensable injury under section 287.020.3(1) (which does require application of the prevailing factor test) has already been demonstrated. The legal standard for determining an employer's obligation to afford medical care is clearly and plainly articulated in section 287.140.1 as whether the treatment is *reasonably required to cure and relieve the effects of the injury.*

*Id.* at 518.

*Tillotson* went on to declare that "once it is determined that there has been a compensable accident, a claimant need only prove that the need for treatment and medication flow from the work injury." *Id.* at 519. *Tillotson* did not make new law but, rather, articulated the statutory requirements that were already in place

for determining the compensation due to the claimant pursuant to section 287.140.1, which provides that an employer shall provide the claimant the treatment that "may reasonably be required ... to cure and relieve from the effects" of the work-related injury. *See Tillotson,* 347 S.W.3d at 518–19.

Hornbeck is correct that the Commission in his case, as in *Tillotson,* refused to compensate treatment that was claimed to relate to a compensable work injury but that the employer believed was not caused by the work injury as a "prevailing factor." [15] In *Tillotson,* the Commission had found that the "conceded compensable injury was not the 'prevailing factor' in requiring a total knee replacement." *Id.* at 518. In Hornbeck's case, the Commission found that his compensable work injury in November 2006 was not the "prevailing factor" for the medical treatments and disabilities for which he sought compensation after April 2007. It is not clear from the Commission's decision in Hornbeck's case, however, whether it was declaring that his compensable work injury was not the "prevailing factor" for the *injuries* for which he sought treatment after April 2007 or whether it was declaring that his compensable work injury was not the "prevailing factor" for the *treatments* for which he sought compensation after April 2007.

Considering *Tillotson,* the Commission's reasoning in Hornbeck's case does appear to confuse that section 287.140.1 does not have a "prevailing factor" component but, rather, tests whether a treatment for which workers' compensation is sought is a treatment that "may reasonably be required ... to cure and relieve" the effects of a compensable work-related injury. The Commission did not contemplate the "flow from the work injury" reasoning employed in *Tillotson* when deciding Hornbeck's case because *Tillotson* came after the Commission's decision. But *Tillotson*'s reasoning echoed the reasoning in *Bowers v. Hiland Dairy Co.,* in which the court opined:

> [A] workers' compensation claimant is not required, for purposes of reimbursement for past treatment and medications, to prove that medical treatment rendered following the date of the work-related accident benefited *only* the conditions resulting from the work-related injury. Rather, **a claimant need only prove that the need for the treatment and medication flow from the work injury,** and the fact the medication or treatment may also benefit a non-compensable or earlier injury or condition is irrelevant; [and] likewise, a workers' compensation claimant cannot be denied an award for future medication and treatment because he could not prove they would *only* benefit the work injury.

*Bowers,* 188 S.W.3d 79, 83 (Mo.App.2006) (bolded emphasis added). The Commission's decision reflected some contemplation of the *Bowers'* "flow from the work injury" standard insofar as it cited *Bowers* after this statement regarding Dr. Aubuchon's testimony:

> We find unpersuasive that portion of Dr. Aubuchon's testimony tying a future need for orthotics to the work injury.

15. Notably, Spectra's arguments do not assert that Hornbeck wrongly is advancing *Tillotson* as outlining proper standards for assessing his claims. Instead, Spectra argues that *Tillotson* is distinguishable on its facts insofar as the employer in that case did not question that the claimant's surgical treatment was required after her work-related injury occurred. Spectra notes that its evidence was contrary to Hornbeck's evidence on the issue of whether his treatments after the April 2007 MMI date were necessary to provide him relief, and it highlights that its evidence was found more credible than Hornbeck's evidence.

[He] did not identify the objective findings, diagnosis, or medical condition resulting from the work injury that would reasonably require future treatment in the form of orthotics. As a result, we find that [his] testimony does not establish the requisite showing that [Hornbeck] has a need for orthodics that 'flows' from the work injury.

In its conclusion to that section, however, the Commission again stated its finding that Hornbeck had not shown that his work-related injury was the "prevailing factor causing a resulting medical condition and disability for which treatment was reasonably required after April 24, 2007."

It is not clear why the Commission emphasized the "prevailing factor" rationale as the main component of its "medical causation" analysis and only briefly contemplated a "flows from" analysis in regard to Dr. Aubuchon's testimony. However, the context of the Commission's decision taken as a whole reflects that its conclusions would have been the same even if it had not emphasized "prevailing factor" reasoning in affirming the ALJ's denial of Hornbeck's request for compensation after April 2007. The Commission found: "We conclude that [the medical records generated in connection with Hornbeck's post-April 2007 treatment] provide no support for [his] claim that he remained in need of treatment after April 2007 as a result of the work injury." Given the Commission's credibility assessments of the evidence in Hornbeck's case, it does not appear that there would have been sufficient evidence on which the Commission would have concluded that, pursuant to section 287.140.1, Hornbeck showed that his post-April 2007 treatments were reasonably necessary to cure and relieve the effects of his compensable November 2006 work injury. *Cf. Tillotson,* 347 S.W.3d at 521 (finding that, if the Com-

mission in that case had "applied the proper standard described in section 287.140.1[,] ... [it] would have been required to find as a matter of law that the claimant's total knee replacement was reasonably required to cure and relieve [her] compensable injury;" noting that the medical evidence in that case was aligned and no expert contested that the claimed surgery was not reasonably required to cure and relieve the effects of the work-related injury). Given the facts in this case, this Court is not persuaded by Hornbeck's assertions that his case should be remanded to the Commission for consideration in light of *Tillotson*'s standards.

### 4. Claims for Additional TTD Benefits & Attorneys' Fees & Costs

Hornbeck maintains that the Commission erred in refusing him additional TTD benefits because his treatment records and evidence supported a finding that he was *totally disabled and in need of additional medical treatment* after he was released from the care of the Spectra-provided physicians in April 2007. As addressed above, the Commission was free to disbelieve Hornbeck's evidence in this regard· and to instead find credible the evidence provided by the Spectra-provided physicians. Because Hornbeck fails to persuade that he should prevail on his claims for additional TTD benefits, there is no need to address his arguments that he should have been awarded additional attorneys' fees and costs *associated with his challenge to Spectra's ongoing denial of additional benefits.*

### 5. The PPD Award

Arguing that the final award entered in his case is not supported by substantial and competent evidence, Hornbeck also asks this Court to reconsider the PPD awards accepted by the Commission. His claims on this matter, however, further belabor his arguments regarding the per-

suasiveness of Dr. Volarich's testimony, and this Court is not persuaded that his award should be recalculated. As noted above, it was within the Commission's authority to believe or disbelieve the expert evidence presented in this case and to apply those evidentiary conclusions in determining Hornbeck's award.

### C. Past Due Medical Expenses, Interest, and Future Medical Expenses

Hornbeck additionally asserts that the Commission erred in failing to award him past due medical expenses, interest, and future medical expenses. He argues that the Commission's decision reflects a misapplication of the law and is contrary to the overwhelming weight of the evidence in his case, but his arguments as to these expenses track his previous arguments about the credibility of Dr. Volarich's testimony. As discussed above, this Court will defer to witness credibility determinations made by the Commission. In Hornbeck's case, the Commission gave thorough consideration of the evidence presented regarding Hornbeck's injuries, treatments, and need for future treatments. Hornbeck fails to persuade that the Commission's decisions about these issues were in error, and further discussion of this point is not warranted.

### V. Conclusion

For the foregoing reasons, this Court affirms the Commission's decision as it is modified by this opinion.

TEITELMAN, C.J., BRECKENRIDGE, FISCHER, STITH and PRICE, JJ., and BYRN, Sp.J., concur.

DRAPER, J., not participating.