Lynda NOEL, Appellant,

v.

**ABB COMBUSTION ENGINEERING,**
**Employer/Respondent.**

and

**National Union Fire Ins. Co.,**
**Insurer/Respondent,**

and

**Treasurer of Missouri as Custodian of**
**Second Injury Fund, Respondent.**

**No. ED 98446.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Nov. 13, 2012.

Keith E. Link, St. Louis, MO, for appellant.

John P. Kafoury, St. Louis, MO, for respondents.

GARY M. GAERTNER, JR., Chief Judge.

## Introduction

Lynda Noel (Appellant) appeals the decision of the Labor and Industrial Relations Commission (Commission) denying her request for a determination that changing her medication regimen would endanger her life, health, or recovery, and

denying her request for costs. We affirm in part, reverse in part, and remand.

## Background

Appellant sustained a work-related back injury in 1997, for which she was awarded compensation and future benefits for treatment to be paid by her employer, ABB Combustion Engineering (Employer).[1] Since that time, Appellant has been treated for chronic pain by a pain management physician, Dr. Steven Granberg, and for depression and psychiatric disorders by Dr. Gordon Robinson, a psychiatrist.

Appellant sustained additional work-related injuries in 1999 and 2000. While her worker's compensation claim had been pending for all three injuries, Employer attempted to change Appellant's doctors, which was taken up as part of her claim. The final award was issued by the Commission in 2007, which incorporated the 2006 award of Administrative Law Judge (ALJ) Jack Knowlan. ALJ Knowlan found that Appellant was permanently and totally disabled as a result of her "1997 back injury and the resulting depression." He ordered Employer to provide future medical treatment for these conditions, and saw no reason other than cost for a change in Appellant's doctors. He noted that if Employer made such a change and Appellant responded poorly to it, those circumstances might support a finding that the change had endangered Appellant's life, health, or recovery, and he awarded costs to Appellant. Employer continued providing treatment to Appellant through Drs. Robinson and Granberg, and by 2011, she was taking a total of 13 medications, excluding vitamin supplements.

In April 2011, Employer required Appellant to undergo an independent medical examination (ME), conducted by Dr. Michael Jarvis. He concluded that both Drs. Granberg and Robinson had "lost their respective ways" in terms of treatment of Appellant,[2] and he recommended several changes to Appellant's medication. Later that year, Appellant was notified by Employer's attorney that several of the medications she was taking ("disputed medications") would no longer be paid for by Employer.[3] Essentially, Employer removed all of Appellant's psychiatric medications except for an anti-depressant, Zoloft, and its corresponding generic brand, Sertraline. Employer also agreed to cover two pain medications: Topamax and Methadone. Because the latter was not one of Appellant's current pain medications, Employer stated it would provide a limited supply of her current medication, Oxycontin, to help her transition to Methadone.

Appellant filed a motion with the Commission to reopen her worker's compensation claim, requesting that the Commission prevent such a change in medication because it would endanger her life, health, or recovery. The Commission ordered an ev-

---

1. We note benefits are actually paid through Employer's insurer, National Union Fire Insurance Company, but to simplify, we refer to both parties collectively herein as "Employer."

2. When asked whether the treatment provided by Drs. Granberg and Robinson had provided some improvement to Appellant's condition, Dr. Jarvis also noted that Appellant is "not back to work, so she's not functioning as well as she could."

3. The changes Employer made to Appellant's medication are the same changes recommended by Dr. Jarvis. Specifically, the disputed medications are Synthyroid, Geodon, Provigil, Lamictal (Lamotrigine), Desipramine, Wellbutrin (Bupropin), Ambien (Zolpidem), Valium (Diazepam), Oxycontin, Oxycodone, and Methylfolate. There was also some discussion of removing Deplin (L-methylfolate), but Dr. Jarvis notes in his letter that Appellant told him that she had a prescription for that medication but did not take it.

identiary hearing, which was conducted by ALJ Carl Strange. The Commission then reviewed the transcript of the hearing, the exhibits filed, and the briefs of the parties. The Commission concluded that Appellant failed to meet her burden to show that all of the medications she was taking were necessary for the cure and relief of her work-related injuries. Thus, the Commission did not reach the issue of whether a change in treatment would endanger Appellant's life, health, or recovery. This appeal follows.

## Standard of Review

In reviewing a decision by the Commission, we review only questions of law and may modify, reverse, remand for rehearing, or set aside the award only if: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the ·Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant making the award. Section 287.495.1.[4] "[I]n the absence of fraud, the findings of fact made by the [C]ommission within its powers shall be conclusive and binding." *Id.*

██ "A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003). We make this determination by examining the evidence in the context of the whole record. *Id.* at 223. "We defer to the Commission's assessment of witness credibility and the weight given to the testimony." *Pursley v. Christian*

*Hosp. Ne./Nw.,* 355 S.W.3d 508, 514 (Mo. App. E.D.2011).

## Discussion

Appellant raises two points on appeal. First, she argues that the Commission erred in determining she failed to show that the disputed medications were necessary for the treatment of her work-related injuries. Second, she argues the Commission erred therefore in denying her request for costs under Section 287.560 because Employer unreasonably discontinued coverage of the disputed medications.

## Point I

Appellant argues the Commission's conclusion that Appellant failed to show that all of the disputed medications treated her work-related injuries was contrary to the overwhelming weight of the evidence. We agree in part.

██ Section 287.140.1 provides continuing medical treatment as part of an employee's compensation for work-related injuries:

> In addition to all other compensation paid to the employee under this section, the employee shall receive and the employer shall provide such medical ... treatment ... as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury.

Appellant's request for relief was premised on subsection 2 of the same statute, which states;

> If ... the requirements are being furnished in such a manner that there is reasonable ground for believing that the life, health, or recovery of the employee

4. All statutory references are to RSMo. (2000), as supplemented, unless otherwise indicated.

is endangered thereby, the division or commission may order a change. . . .

Reading these two subsections together, an employee's treatment must be reasonably required under subsection 1 before the Commission can make a determination under subsection 2 as to how that treatment is being provided. Subsection 1's burden to show treatment is reasonably required is on the employee, but "a claimant need only prove that the need for the treatment and medication flow from the work injury." *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 635 (Mo. banc 2012) (quoting *Tillotson v. St. Joseph Med. Ctr.*, 347 S.W.3d 511, 519 (Mo.App. W.D. 2011)).

Here, after summarizing the evidence offered by both parties, the Commission made the following findings:

> Drs. Robinson and Granberg opine that a change in [Appellant]'s current medication could have an adverse impact on her health, but they do not provide any support for the argument that all of [Appellant]'s current medication is required to cure and relieve [Appellant] from the effects of the work-related injury.
>
> We find ... [Appellant] has failed to satisfy her burden of proving that all of her current prescription medications are reasonably required to cure and relieve from the effects of the injury. . . .
>
> [Appellant] failed to show the treatments in question flow from the work injury. Consequently, [Appellant] has failed to show we have authority to consider the treatments.

As stated above, Appellant was receiving two forms of treatment: physical pain management treatment from Dr. Granberg

and psychiatric treatment from Dr. Robinson. The Commission's general finding regarding "treatments in question" encompasses the changes that Employer made to both types of medication. Because our conclusions regarding the Commission's findings are different for each of these sets of medication, we address them separately.

### Pain Management

■ First, with respect to Appellant's pain medication, we agree with Appellant that the Commission's finding is against the overwhelming weight of the evidence. Therefore, the Commission erred in failing to reach the issue of whether Employer's change to Appellant's pain medication would endanger her life, health, or recovery.

Appellant's burden was to show that her need for chronic pain medication and treatment flowed from her work injury. *See Hornbeck*, 370 S.W.3d at 634. At the hearing before ALJ Strange, Appellant testified that Dr. Granberg had been treating her the previous 11 years for chronic pain in her back. Employer did not dispute that Appellant's pain management treatment with Dr. Granberg was for pain associated with her 1997 work-related back injury, and ALJ Knowlan's 2006 award ordered Employer to provide future treatment for Employee's back pain. All of the doctors who provided testimony agreed that Appellant was in need of pain medication to treat chronic pain resulting from this injury; they simply disagreed as to which pain medication was appropriate or most effective for Appellant.[5] In light of Appellant's threshold burden to show only that the *need* for treatment flows from the work injury, *Hornbeck*, 370 S.W.3d at 634,

---

5. The primary concern from all doctors except Dr. Granberg was that Appellant was taking a high dose of narcotics. Dr. Granberg stated that there are risks for abuse with this type of medication, but he has neither seen any red flags of this type of behavior with Appellant, nor has he seen any reason to change her medication.

such determinations as to the propriety or effectiveness of particular treatments are more suitably part of an inquiry under Section 287.140.2 into the manner in which Employer provides treatment for the compensable injury.

In light of the whole record, the evidence is undisputed that pain medication is reasonably necessary to cure and relieve Appellant from the effects of her work-related injury, and that it is accordingly Employer's obligation to provide such treatment.[6] *See* Section 287.140.1; *Hornbeck*, 370 S.W.3d at 635. Therefore, the Commission erred in failing to reach the issue of whether reasonable grounds existed to believe the manner in which Employer chose to provide this pain medication and treatment would endanger Appellant's life, health, or recovery, under Section 287.140.2. We reverse the Commission's order in this respect and remand for such a determination.

### Psychiatric Treatment

■ Regarding the disputed medications that were prescribed by Dr. Robinson, the Commission's finding as to the majority of them is supported by competent and substantial evidence. However, we agree with Appellant that this is not true regarding Ambien and Valium.

The record is replete with opinions from both Dr. Robinson and Dr. Jarvis regarding the effectiveness of Appellant's current psychiatric medications and whether she would be harmed by any change in her regimen. However, there are fewer clear statements from either doctor regarding the threshold issue of whether the need for each of these individual medications flows from Appellant's compensable injury.

ALJ Strange's 2006 award held Employer responsible to provide future medical treatment under Section 287.140.1 for depression caused by her 1997 back injury. Additionally, Dr. Robinson connected the medications he currently prescribed to treatment for Appellant's depression. He says the cause of Appellant's depression is multi-factorial but is all part of an ongoing condition triggered by her 1997 compensable injury. If Dr. Robinson was found to be credible and persuasive, then Appellant argues the fact that these medications also treated other causes of depression would not affect the Employer's obligation to provide them. *See Bowers v. Hiland Dairy Co.*, 188 S.W.3d 79, 83 (Mo.App. S.D.2006), *quoted in Hornbeck*, 370 S.W.3d at 635.

However, Dr. Jarvis offered a contrary opinion. He catalogued Dr. Robinson's records of his sessions with Appellant, and Dr. Jarvis concluded that Dr. Robinson incorrectly identified the root cause of Appellant's depression. Dr. Jarvis opined that Appellant's mood was related to a

---

6. Employer argues in Point II of its brief that Section 287.800, requiring strict construction of worker's compensation statutes, means that Employee must prove that any treatment will both cure *and* relieve the effects of her work-related injury. Employer argues that it is not required to provide medication for these conditions under Section 287.140.1 because medication will never cure her chronic conditions according to both Dr. Robinson and Dr. Granberg. We find no court requiring this rigid interpretation, and in fact, the contrary is true. *See Martin v. Town & Country Supermarkets*, 220 S.W.3d 836, 844 (Mo. App. S.D.2007) (citing *Ford v. Wal–Mart Associates, Inc.*, 155 S.W.3d 824, 828–29 (Mo.App. E.D.2005) (statutory duty to provide treatment is "absolute and unqualified," and "includes treatment which gives comfort or relief from pain, even though a cure is not possible")). In any event, because Section 287.800 became effective on August 28, 2005, its requirement of strict construction does not apply in cases considering injuries occurring before that date. *Wilcut v. Innovative Warehousing*, 247 S.W.3d 1, 4 (Mo.App. E.D.2008); *Doerr v. Teton Transp., Inc.*, 258 S.W.3d 514, 518 n. 2 (Mo.App. S.D.2008).

pre-existing personality disorder, rather than associated with a major depressive episode caused by her work injury.[7] He noted that during Appellant's IME, when he asked her about past traumatic experiences contained in her medical records, she denied them. These included childhood sexual and physical abuse, as well as sexual harassment at work. Dr. Jarvis also observed from Dr. Robinson's records that many of Dr. Robinson's conversations with Appellant in the past several years focused on more recent social and family stressors, including two failed marriages, problems she was having with her sons, and the death of one of her sons. Dr. Jarvis opined in his letter that these things, rather than Appellant's work injury, were the primary cause of her current depressed mood. However, he did allow at his deposition that some of her current depression was caused by her ongoing physical pain and the stress of litigation.

Dr. Jarvis stated that personality disorders are not successfully treated with medication.[8] He believes Appellant's condition is not helped by several of her current medications, and therefore that Dr. Robinson's prescriptions of Lamictal, Provigil, Desipramine, and Wellbutrin have been misprescribed. In any event, Dr. Jarvis opined in his letter that none of these medications are connected with Appellant's compensable injury, because her personality disorder, along with most of the bases for her current depressed mood, were not related to her 1997 back injury.

Additionally, regarding some of the remaining disputed medications, Dr. Jarvis opined that they were being prescribed for non-psychiatric conditions more appropriately addressed by a primary care physician. One of these was Synthyroid, which Dr. Jarvis said treated Appellant's low thyroid levels due to the fact her thyroid had been removed.[9] Another of these medications was Geodon, which Dr. Robinson used to treat a skin-picking problem that Appellant developed due to the high levels of narcotics she was taking for her back pain. Dr. Jarvis opined this problem would be treated by his companion recommendation that her pain medication be changed to Methadone, and he did not believe this was an appropriate condition for Dr. Robinson to address as Appellant's psychiatrist.

Regarding the remaining two disputed medications, Ambien and Valium, Dr. Jarvis did not analyze specifically how they affected Appellant or whether they were directed at treating her work-related injury. He simply concluded only Zoloft should be continued and had been effective in treating Appellant's depressed mood, even before she sustained her compensable back injury in 1997.

---

7. This would imply that Employer is not responsible for providing any treatment for Appellant's depression. Appellant does not argue in either point on appeal that it was improper for Dr. Jarvis to base his opinion in part on finding that Appellant suffered from a pre-existing personality disorder, contrary to the finding of ALJ Knowlan that her depression was caused by her work injury. Thus, we do not analyze such an argument here. It appears that at least regarding Zoloft, Employer does not dispute whether that medication is reasonably required to treat Appellant's work-related injury (specifically, the depression resulting from her work injury). Employer does not argue that Appellant's depression is completely unrelated to her work injury, but only that not all of Appellant's medications are directed at treating what flowed from her work injury.

8. Dr. Robinson agreed; he stated he was unable to determine whether Appellant had a personality disorder, but treated her depressed mood with medication.

9. Dr. Robinson explained Appellant's depression had also been caused by low thyroid levels.

Therefore, the Commission heard conflicting evidence regarding Appellant's use of Lamictal, Provigil, Desipramine, Wellbutrin, Synthyroid, and Geodon.[10] Dr. Robinson stated that Appellant's need for these medications came from her work-related injury and resulting depression.[11] Dr. Jarvis disagreed. Both opinions constitute competent and substantial evidence upon which the Commission could rely. The Commission's conclusion that Appellant failed to meet her burden regarding these medications makes clear the Commission chose to believe Dr. Jarvis over Dr. Robinson. We cannot disrupt this choice on appeal, even if we would reach a different conclusion. *See Poole v. City of St. Louis*, 328 S.W.3d 277, 289 (Mo.App. E.D.2010). Thus, we conclude the Commission's finding that Appellant failed to meet her burden regarding these medications is supported by competent and substantial evidence on the whole record. *Accord Kuykendall v. Gates Rubber Co.*, 207 S.W.3d 694 (Mo.App. S.D.2006) (finding Commission's decision denying future medical care supported by competent and substantial evidence where claimant recited personal and familial reasons for stress

"[v]irtually every time [he] reported he was suffering from depression and anxiety").

■ However, regarding Ambien and Valium, Dr. Robinson's opinion that Appellant's need for them flows from her work injury was not refuted by Dr. Jarvis. Dr. Jarvis never directly recommended that Appellant stop taking these two medications; at most, such a recommendation can only be implied as part of his conclusion that the only effective medication for Appellant was Zoloft.[12] But Dr. Jarvis' deposition testimony and written letter are silent on the threshold issue here: whether Ambien and Valium are prescribed to treat Appellant's depressed mood attributable to her work injury. Because Dr. Jarvis allowed that at least some of Appellant's depressed mood did stem from her compensable injury, and because Dr. Jarvis did not deny that Ambien and Valium treated this depression; Dr. Robinson's opinion that these two medications were directed at treating the effects of Appellant's compensable injury is not necessarily inconsistent with Dr. Jarvis's testimony.[13]

10. Additionally, while the Commission does not appear to rely on it, a Drug Utilization Advisory conducted in 2009 by Coventry Workers' Comp Services, analyzing Appellant's medication regimen from a cost standpoint, also recommended several of the same changes in medication that Dr. Jarvis recommended. However, it provided that Appellant could remain on more of her current medications than Dr. Jarvis recommended; specifically, Appellant would remain on or take adjusted doses of Wellbutrin, Tizanidine (a muscle relaxant), Morphine, Oxycodone, Zoloft, and Desipramine. Valium would have been removed from Appellant's regimen because of duplication with Tizanidine.

11. Dr. Robinson directed some of these medications at treating side-effects Appellant experienced from the pain medication she took for her back, or he prescribed medication for what he described as common off-label uses

to augment other medications she took for depression. He also discussed his opinion that Appellant required a "cocktail" of medications for effective treatment.

12. Dr. Jarvis's statement was that "the following medications could be reasonably discontinued over[ ]time: Provigil, Geodon, Lamictal, Wellbutrin, Deplin, and Desipramine.... Her Oxycontin can be reasonably changed to [M]ethadone." The Commission quoted this language in its findings.

13. In the record, the doctors' disagreement over these two medications extends only to their effectiveness, and as discussed, *supra*, any analysis concerning the effectiveness or necessity of various treatments belongs in the Commission's inquiry under Section 287.140.2, after the threshold has been established and the Commission finds these treat-

Additionally, the Commission did not make specific credibility findings. Such findings are implicit only to the extent that where Dr. Jarvis and Dr. Robinson disagreed, the Commission's findings show it believed Dr. Jarvis over Dr. Robinson. Again, this threshold under subsection 1 of the statute requires only that Appellant show her need for Ambien and Valium flowed from her work injury. *Hornbeck*, 370 S.W.3d at 634. As we see no apparent disagreement between the two doctors on this issue, and because we have no credibility determination by the Commission that requires us to disregard Dr. Robinson's opinion that these two medications treated Appellant's compensable injury, the rule in *Corp. v. Joplin Cement Co.*, 337 S.W.2d 252 (Mo. banc 1960), applies. *See Highley v. Von Weise Gear*, 247 S.W.3d 52, 57 (Mo.App. E.D.2008). This rule allows us to find that "the award was not based upon disbelief of the testimony of witnesses," and that the Commission "arbitrarily disregard[ed] or ignore[d] competent, substantial and undisputed evidence of [a] witness[ ] who ha[s] not been impeached." *Id.*

As there is nothing on the record disputing Dr. Robinson's testimony that Appellant does need Ambien and Valium for depression stemming from her work injury, and because the Commission did not find Dr. Robinson incredible, the Commission's finding that Appellant failed to meet her burden regarding these two medications was not supported by competent and substantial evidence on the record as a whole. *See id.* at 58. Therefore, we remand for the Commission to consider whether removing Ambien and Valium from Appellant's medication regimen will endanger her life, health, or recovery, under Section 287.140.2.

*Point II*

Appellant argues the Commission erred in finding Employer was not liable for costs under Section 287.560. In light of our partial reversal, we instruct the Commission to consider this point on remand.

Section 287.560 allows the Commission to award attorney's fees where it determines that the "proceedings have been brought, prosecuted or defended without reasonable ground. . . ." Here, because the Commission found Employer's changes to Appellant's medication to have merit, it concluded they were not unreasonable. However, we have found, as it relates to Appellant's pain medication and two of her psychiatric medications, Appellant met her burden to show that her need for these medications arose from her work injury.

In this light, there is evidence on the record, most poignantly as it relates to Appellant's pain medication, that Employer has unreasonably pursued making these changes. Dr. Granberg said unequivocally that any change to her medication is motivated solely by cost, and there are risks to Appellant's health associated with the long-term use of Methadone. Appellant testified that she had previously been unsuccessfully treated for pain with Methadone, and the medication made her confused. However, it lies with the Commission to determine credibility on this issue, thus we leave it to the Commission to make the subsequent legal determination under Section 287.560 as to whether Employer's action was unreasonable as it relates to Ambien, Valium, and Appellant's pain medication.

*Conclusion*

The Commission's conclusion that Appellant failed to show her need for Lamic-

---

ments are in fact aimed at a compensable condition. The effectiveness of any treatment not directed at a compensable injury is irrelevant.

 

tal, Provigil, Desipramine, Wellbutrin, Synthyroid, and Geodon flowed from her work injury was supported by substantial and competent evidence. However, the Commission's same conclusion regarding Ambien and Valium was not so supported; and its conclusion regarding Appellant's pain medication was against the overwhelming weight of the evidence. We reverse in part and remand to the Commission with instructions to consider whether Employer's changes to Appellant's pain medication as well as its removal of Ambien and Valium will endanger Appellant's life, health, or recovery, under Section 287.140.2. We also instruct the Commission, in light of its conclusion, to determine the extent of Employer's liability for costs under Section 287.560.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

SHERRI B. SULLIVAN and ROBERT M. CLAYTON III, JJ. concur.