

# Missouri Court of Appeals

### Southern District

### Division Two

JAMIE E. OVERSTREET,      )
     )
     Appellant,      )
     )
vs.      )    No. SD37171
     )
TAMKO BUILDING PRODUCTS, INC.,      )
and ACE AMERICAN INSURANCE      )
COMPANY,      )
     )    **Filed: January 27, 2022**
     Respondents.      )

#### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**<u>AFFIRMED</u>**

Jamie E. Overstreet ("Overstreet") appeals the denial of workers' compensation benefits. The Labor and Industrial Relations Commission ("the Commission") found Overstreet was not entitled to an award because his injury did not arise out of and in the course of his employment. Because Overstreet failed to establish that his injury's risk source was related to his employment and that he was not equally exposed to that risk in non-employment life, the Commission's decision is affirmed.

### Background

Overstreet worked as an asphalt plant operator for TAMKO Building Products, Inc. ("TAMKO"). This position required Overstreet to load trucks and unload railroad cars, involving significant amounts of walking, going up and down stairs, and crawling under and on top of railroad cars. On February 12, 2018, Overstreet saw a truck arrive and began walking on

the asphalt path to the load station when he realized he had forgotten his ProxCard.[1]  He planted his foot to turn right, turned around to retrieve his card, heard a "pop" and felt tearing in his left knee.

Overstreet reported the injury, went to the hospital and then was treated by a doctor whose notes stated Overstreet "was in a hurry and was walking very fast when he suddenly switched directions."[2]  The notes from an orthopedic surgeon stated Overstreet was suffering from a left knee "injury that he sustained at work when he went to change directions quickly.  He planted on the left knee and twisted back the other direction, felt a pop and had an immediate onset of pain."  Later, Overstreet began experiencing pain in his right knee.  He was diagnosed with patellofemoral pain syndrome in both knees plus a left knee medial meniscus tear.

Overstreet sought temporary total disability benefits, permanent partial disability, and past medical compensation.  At the hearing with the administrative law judge ("ALJ"), Overstreet, his supervisor, and Dr. P. Brent Koprivica ("Dr. Koprivica") testified and medical records were admitted.  In both deposition and hearing testimony, Overstreet stated the area where he was walking on the date of the injury was not out of the ordinary, not wet, not slick and the area was lit.  He also claimed he was walking "downhill" or "across a decline" or a "slope" when his knee popped.  Overstreet did not indicate the slope was a contributing factor to his knee popping.  Overstreet stated even though there were cracks in the area where he was walking, he could not be sure if he stepped in a crack or that a crack caused his knee incident.  Overstreet's supervisor testified he had never personally experienced or had any other employee experience any difficulties with the area where Overstreet's incident took place due to cracks, holes, or unevenness.  He also testified that TAMKO's asphalt lot was typical and similar to many of the community lots.

---

[1] A "ProxCard" is similar to a hotel room key, which an employee swipes for access to a load station.
[2] Overstreet initially thought he had been walking at a slightly faster than normal pace, but later retracted and said that he was walking at a normal pace.

Finally, Dr. Koprivica opined that Overstreet's "described acute injury on February 12, 2018, where he pivoted and suffered acute injury to his left knee, is felt to represent the direct, proximate and prevailing factor in the identified acute internal derangement of the left knee[.]"

The ALJ found Overstreet did not prove that he suffered a compensable injury arising out of and in the course of his employment because his risk source—walking on asphalt and changing directions—was a risk to which Overstreet was exposed equally outside of employment. The ALJ denied compensation. In making this determination, the ALJ stated:

> Overstreet can cite to no credible or persuasive evidence that the condition of the asphalt surface or the conditions surrounding his walk were a hazard or risk he was not equally not [sic] exposed to outside of work. Nothing in [Overstreet's] testimony or exhibits affirmatively and persuasively proved there was anything different about his walk and change of direction than any walk and direction change away from work. And certainly nothing even arguably established that anything about the walking surface, or surface conditions, were different than similar non-employment conditions.

The Commission affirmed the ALJ's decision and attached and incorporated it into its decision. Overstreet appeals.

## Standard of Review

We review the Commission's Final Award to determine if it is "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18. On appeal, this Court:

> may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the award was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; [or]
>
> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1; *Annayeva v. SAB of TSD of City of St. Louis*, 597 S.W.3d 196, 198 (Mo. banc 2020).[3] "This Court defers to the Commission's factual findings and recognizes that it is the

---

[3] All statutory references are to RSMo (2016).

3

Commission's function to determine credibility of witnesses." ***Hornbeck v. Spectra Painting, Inc.***, 370 S.W.3d 624, 629 (Mo. banc 2012). "When the relevant facts are not in dispute, the issue of whether an accident arose out of and in the course of employment is a question of law requiring *de novo* review." ***Miller v. Missouri Highway & Transp. Comm'n***, 287 S.W.3d 671, 672 (Mo. banc 2009).

### Analysis

The issue in this case is whether the facts found by the Commission support its determination that Overstreet was not entitled to compensation because his injury did not arise out of and in the course of his employment in that the risk source—walking on asphalt and changing directions—was a risk to which Overstreet was equally exposed in his non-employment life. Overstreet argues "the evidence demonstrated multiple work-related risk sources" that caused his injury, including:

> (i) his work duties that unequally exposed him to unique, repetitive stress to his bilateral knees leading up to the time of the acute injury; (ii) the sloped, hillside nature of [TAMKO]'s facility where he was injured; (iii) the busy nature of his work requiring him to think, multi-task, and mentally process information more quickly than in his normal, nonemployment life; (iv) his work-required protective gear of steel-toed boots; (v) the specific location where he was injured, which was a low-lit, cracked, uneven asphalt surface with significant inclines/declines where multiple objects of various sizes and visibilities had to be navigated along with moving semi-trucks; and (vi) his work-required ProxCard he sought to retrieve when he reverse-pivoted and injured his knee.

Overstreet, as claimant, bore the burden of proof to show his injury was compensable under the Missouri Workers' Compensation Act ("Act"). ***Annayeva***, 597 S.W.3d at 199. For an injury to be compensable under the Act, it must arise out of and in the course of employment. *See* §§ 287.020.3; 287.120.1. An injury is deemed to arise out of and in the course of the employment only if:

> . . .

> (b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

4

§ 287.020.3(2)(b). Under that section, a claimant must show "a causal connection between the injury at issue and the employee's work activity" in order for an injury to arise out of and in the course of employment. *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 510 (Mo. banc 2012).

Overstreet's argument is essentially a claim that the Commission misapplied the law concerning section 287.020.3(2)(b)'s "causal connection" requirement. The "causal connection" requirement has been discussed in a number of Supreme Court of Missouri cases beginning in *Miller* and most recently in *Boothe v. DISH Network, Inc.,* No. SC 98948, 2021 WL 6057372 (Mo. banc December 21, 2021). In *Miller*, the claimant was working with a road crew to repair a section of road when he was walking briskly and felt a pop in his knee, which was later determined to be a meniscus tear. *Miller*, 287 S.W.3d at 672. The claimant admitted that his work did not require him to walk in an unusually brisk way; that he normally walked briskly at home and did nothing different than usual when walking at work that day; that nothing about the road surface, his work clothes or the job caused any slip, strain, or unusual movement; and that he did not fall or otherwise sustain any additional injuries due to the popping. *Id.* The Supreme Court affirmed the Commission's denial finding the risk of walking was one to which the claimant was equally exposed to in non-employment life, thus there was no causal connection of the work activity to the injury other than the fact it occurred at work. *Id.* at 674.

*Miller***'s** holding was reiterated in *Johme:*

> *Miller* instructs that it is not enough that an employee's injury occurs while doing something related to or incidental to the employee's work; rather, the employee's injury is only compensable if it is shown to have resulted from a hazard or risk to which the employee would not be equally exposed in "normal nonemployment life."

*Johme*, 366 S.W.3d at 511. In *Johme*, the Supreme Court found the claimant failed to demonstrate she was not equally exposed to the cause of her injury—turning, twisting her ankle, or falling off her shoe while making coffee at work—in her normal non-employment life. *Id.*

The "causal connection" requirement was revisited again in *Annayeva* and *Schoen v. Mid-Missouri Mental Health Center*, 597 S.W.3d 657 (Mo. banc 2020). In *Annayeva*, the claimant was a teacher who slipped in the school and claimed the floor was covered with particles of dirt, ice, dust, and moisture. 597 S.W.3d at 197, 200. The Commission determined that the claimant's testimony regarding the condition of the floor was not credible. *Id.* at 200. Deferring to the Commission's credibility findings, the Supreme Court held that since there was no credible evidence that the claimant's walk within the school was any different from other walks she would have taken in her normal, non-employment life, she failed to demonstrate that her claim was compensable. *Id.* at 200.

In *Schoen*, the claimant was exposed to an insecticide while working for her employer and was sent for further evaluation at a doctor's office where the claimant was injured after tripping over the doctor's foot. 597 S.W.3d at 658. The issue in the case was whether the claimant's injuries from the tripping incident were injuries arising out of the course of her employment. *Id.* at 659-60. The Supreme Court, relying on *Miller*, *Johme*, and *Annayeva*, rejected claimant's argument: "[Claimant] is unable to demonstrate the risk of her accidental tripping was a risk she would not have been exposed to outside of her employment as required by section 287.020.3(2)(b)." *Schoen*, 597 S.W.3d at 661.

Finally, and most recently, our Supreme Court decided *Boothe,* in which a claimant who, while en route to an appointment for work, choked on a breakfast sandwich while driving and was injured in a resulting crash. 2021 WL 6057372 at *1. The Supreme Court found that the claimant "did not establish that the risk source—eating while driving—was related to his employment or that he was not equally exposed to that risk in nonemployment life." *Id.* at *3.

The lesson of this line of cases is clear. It is not enough that a claimant's injury occur at work or even while engaged in a work-related activity. To show a causal connection between the injury and work, the risk involved must be one to which the worker would not have been equally exposed in his non-employment life. Overstreet fails to meet this requirement.

6

Overstreet acknowledged that in his normal non-employment life, he often walked and changed directions. According to Overstreet, the asphalt lot at his work was not dissimilar from numerous other asphalt lots in his community which had similar surfaces, cracks, unevenness and slopes. Overstreet's supervisor also testified that the asphalt on which Overstreet's injury occurred was similar to other asphalt lots.

The only activity that Overstreet identified as causing his injury was walking and turning on the asphalt lot. He did not offer credible evidence that the conditions under which he performed that activity—such as wearing steel-toed boots, the low lighting, cracks in the asphalt—led to or worsened his injury. We defer to the Commission's credibility findings. *Annayeva*, 597 S.W.3d at 200. Thus, there was no causal connection between his injury and his employment other than the injury occurred at work. Overstreet failed to demonstrate that the injury's risk source—walking on asphalt and turning—was a risk which Overstreet was not equally exposed to in his normal, nonemployment life. Overstreet failed to show his injury was compensable under the Act. Overstreet's point is denied.

## Conclusion

The Commission did not misapply the law and properly denied workers' compensation benefits pursuant to section 287.020.3(2)(b). The decision is affirmed.

MARY W. SHEFFIELD, P.J. – OPINION AUTHOR

GARY W. LYNCH, C.J. – CONCURS

DON E. BURRELL, J. – CONCURS

7