

# Missouri Court of Appeals

## Southern District

### Division One

DONALD BRANDENBURG,                           )
                                              )
            Respondent,                        )
                                              )
    vs.                                        )        No. SD32849
                                              )        Filed: April 18, 2014
                                              )
TREASURER OF THE STATE OF MISSOURI,           )
CUSTODIAN OF SECOND INJURY FUND,              )
                                              )
            Appellant.                         )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**AFFIRMED**

The Treasurer of the State of Missouri as Custodian for the Second Injury Fund (the "SIF") appeals a "FINAL AWARD ALLOWING COMPENSATION (Affirming Award and Decision of Administrative Law Judge ["ALJ"] by Supplemental Opinion)" ("Final Award") issued by the Labor and Industrial Relations Commission ("the Commission"), which found Donald Brandenburg ("Brandenburg") to be permanently and totally disabled and determined SIF liability for his benefits. We affirm the decision of the Commission.

**Factual and Procedural Background**

Brandenburg was injured on July 17, 2004, while working as an emergency medical technician ("EMT") for Poplar Bluff Regional Medical Center ("Employer"). The ambulance Brandenburg was riding in was involved in a motor vehicle accident while Brandenburg was riding in the rear of the ambulance with a patient. Brandenburg's body was thrown within the ambulance causing injury to Brandenburg's low back and neck, a loss of consciousness, and a concussion. Brandenburg was 44 years of age at the time of the accident.

Brandenburg was seen in the emergency room where extensive imaging testing was done. He was released eight hours later and thereafter underwent conservative treatment for his neck and back through his primary care physician. On July 29, 2004, Brandenburg returned to the emergency room with complaints of back pain after he "rolled out of bed" and felt a "snap in the middle of his back." An MRI and CT scan of his back revealed a compression fracture at T7 and T8. A "kyphoplasty" was recommended to correct the compression fracture, but Brandenburg indicated "he was not up to this procedure."

On September 24, 2004, Brandenburg was seen by Dr. Stephen Segall ("Dr. Segall") for complaints of headaches, dizziness, staring episodes, and probable convulsions. Brandenburg underwent an MRI of the brain on October 14, 2004, which revealed a "4 mm. focus of signal abnormality within the deep cortical white matter of the left frontal lobe[.]" Brandenburg was placed on medication for headaches and seizures.

In addition, Brandenburg continued to have problems with his neck. On November 2, 2004, Brandenburg underwent a CT of his neck which revealed a nerve impingement and disc protrusion at C5-6 and a C6-7. Brandenburg underwent a cervical fusion at C5-6 and C6-7 on November 6, 2005.

2

In January 2005, Dr. Segall restricted Brandenburg to "sitting 30 minutes at a time for a total of two hours per day, walking 15 minutes at a time for a total of one hour per day, standing for 30 minutes at a time for a total of two hours per day." Brandenburg was also to do no "lifting or carrying," and could not "stoop, kneel, or climb" because of his neck fusion, abnormal CT of the brain, blackout spells, and possible seizures. Dr. Segall concluded that Brandenburg's prognosis was "guarded with regard to the persistent neck pain and seizure disorder. It is unclear what the ramifications will be in the future from these problems."

Brandenburg's pre-existing conditions consisted of the following:

1.     January 1980:  auto accident wherein he injured his neck and low back.

2.     July 1980:  a fifty-foot fall which injured his left knee, and after numerous surgical procedures, resulted in a left knee fusion in September 1990. After the fusion, Brandenburg could not bend his knee or squat, and his left leg was shorter than the right by almost an inch. Brandenburg had to wear a specially made boot on his left foot which caused him problems with lifting and put extra strain on his back.

3.     September 1985:  Brandenburg suffered an injury to his back when he fell twelve feet from a ladder. Two months later, Brandenburg suffered a L4-L5 lumbar nerve root compression also as the result of a fall from a ladder and was diagnosed with chronic lumbosacral strain. Both of these falls were reportedly caused due to the weakness and problems Brandenburg had with his left knee.

4.     June 1986:  Brandenburg injured his back while "lifting shingles." Thereafter, Brandenburg received chiropractic treatment from various chiropractors for his back through 1992, which did not relieve his pain. Brandenburg was off work the summer of 1986 through November 1987 due to continuing left leg and low back pain. In 1987, it was the opinion of one chiropractor that Brandenburg should avoid lifting

3

anything heavier than 20 pounds, with no prolonged sitting or standing, and no excessive bending and twisting. In 1989, another chiropractor opined that due to Brandenburg's "two severe back injuries" any training or job would have to be tailored to his capabilities, and that Brandenburg's incapacity was a permanent condition.

5.      April 1998: Brandenburg was in another ambulance accident where he tore his left rotator cuff; he was conservatively treated with several injections, but continued having problems and sought treatment up through 2001. Brandenburg also began experiencing problems with his right arm, as well as migraine headaches with blurred vision.

On July 22, 2004, Brandenburg filed his original "Claim for Compensation" against Employer and SIF, claiming "permanent partial disability" against the SIF. On June 21, 2006, Brandenburg filed an "Amended Claim for Compensation" claiming "permanent total disability" against SIF.

On May 28, 2009, Brandenburg settled his July 17, 2004 injury claim with Employer for 60% permanent partial disability to the body as a whole, referable to his neck and back.

A hearing was held before an ALJ on July 2, 2012, for the remaining claim with the SIF. At the hearing, Brandenburg testified he became an EMT because he was unable to return to his former work as a telephone/cable linesman after his knee fusion because he could not climb the poles. His continued back pain was also a factor. He testified his knee caused him problems as an EMT because he could not "work on a patient in tight spots" like in a small bathroom. His partner, Joe Jenkins ("Jenkins") would have to go in by himself and bring the patient out to the stretcher before Brandenburg could work on the patient. Brandenburg also had problems with his low back as he could not bend his knee or squat causing him to constantly bend over. He admitted he was "cranky" a lot of the time due to pain; he took Tylenol for relief. Since the

4

accident, Brandenburg has had to take seizure and headache medications, pain medication, and muscle relaxers. He also suffers from light sensitivity and panic attacks.

On cross-examination, Brandenburg admitted that at one point in 2006, he did lift weights but only to increase his arm strength to assist in lifting patients.

Jenkins testified on Brandenburg's behalf. Jenkins testified he had known Brandenburg for fifteen years, had partnered with him for five years preceding the accident, and he was driving the ambulance Brandenburg was riding in on the day of the accident. Jenkins stated that prior to the July 17, 2004 accident, Brandenburg would complain every day about his back bothering him, and would also complain about leg pain and headaches. He testified that Brandenburg would get cranky, irritable, and short-tempered with other medical personnel, but that he was able to "keep him under control when he was on scene or in the hospital." One incident occurred after transporting a patient two-and-a-half-hours to Memphis where Brandenburg was unable to stand up and stretch. Upon arrival, the admitting doctor was critical of the patient being intubated and Brandenburg made an inappropriate response resulting in the doctor getting extremely mad and calling security.

Jenkins also testified that Brandenburg could only work in three of the eight ambulances because due to Brandenburg needed a "certain distance between the seat and firewall to be able to sit in the front of the ambulance" due to his knee fusion. Jenkins testified he always lifted the heavy end of the stretcher—the upper torso area—because "it was easier for [Brandenburg]" causing Brandenburg less back pain. When they were not on a call, he and Brandenburg would be in the "dayroom" at the "operations center." However, Brandenburg would be "lying down, trying to relieve the pain of his back and get off of his leg." Jenkins testified the accident occurred when he hit a car in the front passenger area, went over the top of the hood, and hit a light pole. Brandenburg would have been standing near the patient preparing to intubate at the

5

time of the collision. He testified that at the emergency room, Brandenburg complained of back, head, and neck pain.

The deposition of Dr. Jerome Levy ("Dr. Levy") was entered into evidence. Dr. Levy evaluated Brandenburg's disabilities at the request of Brandenburg's attorney on April 20, 2006. Dr. Levy concluded Brandenburg's ratable disabilities from the primary injury were 40% permanent partial disability to the body as a whole due to his neck fusion, and 20% permanent partial disability to the body as a whole due to his increased low back problems since the accident. Dr. Levy further concluded Brandenburg had pre-existing disabilities of 50% permanent partial disability to left knee due to the fusion, weakness, and atrophy in the left leg; and 10% permanent partial disability to Brandenburg's right shoulder. Dr. Levy testified that Brandenburg had some low back complaints which pre-existed the primary injury, but he did not assign any pre-existing permanent disability attributable to Brandenburg's low back. Dr. Levy testified that Brandenburg was not "employable in the open labor market[,]" that he was "permanently and totally disabled" as a result of the combination of impairments creating a greater disability than the simple total of each, and a loading factor should be added.

On cross-examination by SIF, Dr. Levy testified that if Brandenburg could find a position in a "sheltered workshop type of thing," he would be employable as most people could perform "anything under those circumstances." However, in an open labor market, he "[m]edically . . . would not defer to a vocational expert" regarding what jobs Brandenburg "could perform given the physician imposed restrictions[.]" Dr. Levy testified he did have some background in working in the Missouri Department of Vocational Rehabilitation where he made determinations on whether somebody could be placed in a particular position.

The deposition of Ms. Susan Shea ("Ms. Shea"), a Certified Rehabilitation Counselor, was also entered into evidence. Ms. Shea was retained by Brandenburg's attorney to evaluate

6

Brandenburg's employability and she saw Brandenburg in October 2007. Ms. Shea testified consistent with her report. She opined that Brandenburg had no transferable skills in the appropriate light-work level to indicate any occupations he could do. Ms. Shea concluded that Brandenburg was unemployable in the regular work force of the national labor market because: (1) of his pain level with activity, (2) the narcotic medication he took for pain, (3) he could not return to any previous work, (4) there were no jobs which met the physical criteria given Brandenburg's complaints and limitations, (5) his skills did not transfer to any physically tolerable work, and (6) his seizure disorder and medications would provide a disincentive for any typical prospective employer. Ms. Shea concluded that it was "highly unlikely that any typical employer would consider hiring [Brandenburg given his] limitations and medical history."

SIF entered into evidence the report of Mr. James England ("Mr. England"), a vocational expert retained by SIF, to evaluate Brandenburg's employability in the open labor market. Mr. England opined that based on the findings of Dr. Segall and Brandenburg's "description of his functional difficulties related to the primary injury," Brandenburg "would likely be totally unemployable in any work capacity." However, Mr. England opined this would be due to the "effects of the primary injury in isolation and regardless of any pre-existing problems with his lower extremities." Mr. England found that Brandenburg was capable of functioning at a very heavy level of exertion consistently up to the point of the primary injury, and sustained that level of work activity for nearly twenty years. Mr. England concluded that if "someone is limited to the degree noted by Dr. Segall or who has the combination of medical problems that [Brandenburg] described related to the primary injury . . . [this] could totally incapacitate him."

In the award issued on October 3, 2012, the ALJ found Brandenburg to be permanently and totally disabled as a result of a combination of his primary injuries and pre-existing injuries. The ALJ found that SIF "failed to offer sufficient credible evidence to discredit the opinions of

7

Dr. Levy and [Ms.] Shea[,]" and found the "opinions of Dr. Levy and [Ms.] Shea to be more credible than Mr. England's opinions regarding [Brandenburg]'s permanent and total disability."

The ALJ found that Brandenburg

met his burden of proving that his pre[-]existing conditions amounted to actual and measurable disability at the time of the work injury and were of such seriousness as to constitute a hindrance or obstacle to employment. In accordance with Dr. Levy's opinion, I find that the combination of [Brandenburg]'s impairments create a greater disability than the simple total of each separate injury.

Based on the evidence, I find that no employer would reasonably be expected to hire [Brandenburg] in his present condition and that [Brandenburg] is permanently and totally disabled as a result of a combination of his primary injuries and pre-existing injuries.

The ALJ ordered SIF to pay to Brandenburg permanent and total disability benefits from April 21, 2006 through November 25, 2010; and thereafter pay Brandenburg weekly permanent and total disability benefits from November 26, 2010, through Brandenburg's lifetime unless such payments were suspended pursuant to section 287.200.2.[1]

On October 22, 2012, SIF filed its "Application for Review" with the Commission asserting that the ALJ's award of permanent total disability benefits was erroneous.

On June 27, 2013, the Commission affirmed the award of the ALJ awarding Brandenburg permanent total disability benefits from SIF. The Commission found the testimony of Dr. Levy, Jenkins, and Ms. Shea more credible than the testimony of Mr. England. The Final Award found Mr. England's opinion was "not credible because he takes in to [sic] account all functional difficulties related to the primary injury along with the effects of the primary injury and not just those medically caused by the primary injury." The Final Award granted permanent total disability benefits to Brandenburg from SIF. This appeal followed.

---

[1] Unless otherwise indicated, all statutory references are to RSMo (2000). Because Brandenburg's injury occurred before the effective date of the 2005 amendments to the Workers' Compensation Law, we apply the pre-2005 statute. *See* **Pruett v. Federal Mogul Corp.**, 365 S.W.3d 296, 303-04 n.4 (Mo.App. S.D. 2012).

SIF in its one point on appeal alleges the Commission erred in awarding Brandenburg permanent total disability benefits from SIF because it failed to consider all of Brandenburg's disabilities from his work injury in that those disabilities are the result of the primary work injury and rendered him permanently and totally disabled without consideration of any pre-existing disabilities.

The issue for our consideration is whether there was competent and substantial evidence based upon the whole record supporting the Commission's finding that Brandenburg is permanently and totally disabled as a result of a combination of his primary injuries and pre-existing injuries, and thereby resulting in SIF liability for permanent total disability benefits.

## Standard of Review

As set forth in article V, section 18 of the Missouri Constitution, judicial review of the Commission's award is a determination of whether the award is "supported by competent and substantial evidence upon the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003) (internal quotation marks omitted). We will not disturb the Commission's decision on appeal unless the Commission acted without or in excess of its power, the award was procured by fraud, the facts found by the Commission do not support the award, or the award is not supported by sufficient competent evidence in the record. *Palmentere Bros. Cartage Service v. Wright*, 410 S.W.3d 685, 691 (Mo.App. W.D. 2013); *see also* § 287.495.1. An award that is clearly "contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Hampton*, 121 S.W.3d at 223.

This Court "must determine whether the Commission reasonably could have made its findings and reached its result based upon all of the evidence before it." *Fitzwater v. Dept. of Public Safety*, 198 S.W.3d 623, 627 (Mo.App. W.D. 2006). "In making this determination, we do not reweigh the evidence; the Commission is the judge of the weight to be given to

9

conflicting evidence and the credibility of witnesses." *Palmenter*, 410 S.W.3d at 691 (internal quotation and citation omitted).

SIF argues our standard of review in this matter is *de novo* because SIF claims the Commission's error is a question of law. *See Sell v. Ozarks Med. Ctr.*, 333 S.W.3d 498, 506 (Mo.App. S.D. 2011) (holding we review questions of law *de novo*, and we do not defer to the findings of the Commission). However, the *de novo* standard of review urged by SIF is misplaced because SIF's argument is based upon allegations the Commission failed to consider or ignored expert opinion testimony. Despite the way SIF packaged its position on appeal, it is actually a question of whether the Commission could have reached its result based upon all the evidence before it. Our proper standard of review, therefore, is whether the Commission's award is "contrary to the overwhelming weight of the evidence, [and] then . . . not supported by substantial evidence" requiring reversal. *Palmentere*, 410 S.W.3d at 691.

**Analysis**

SIF specifically argues the Commission failed to consider "all of [Brandenburg's] disabilities from his work injury" and that Brandenburg's "seizures, blackout spells, stiffness in his neck, high pain levels, decreased attention span, panic attacks and severe headaches three times per week which require him to lie down, are the result of his primary work injury and render him permanently and totally disabled without consideration of any pre-existing disabilities." SIF claims the Commission ignored the opinion testimony of Ms. Shea and Mr. England regarding Brandenburg's ability to return to any job because of the effects of the primary injury only.[2]

---

[2] Again we note SIF attempts to frame its argument as a question of law by alleging the Commission failed to follow "the direction of this Court" in *Roller v. Treasurer*, 935 S.W.2d 739 (Mo.App. S.D. 1996). This attempt fails because SIF's position in reality claims error in the weight given evidence and credibility attributed to witnesses by the Commission. This is evident in SIF's claimed error of "ignoring the relevant medical and vocational opinions" and ignoring testimony of experts.

This Court recently set out the law with respect to the Commission's review of SIF liability:

> The Second Injury Fund compensates workers who are permanently and totally disabled by a combination of past disabilities and a primary work injury. Section 287.220 guides the Commission in determining when there is a previous disability that may be compensable from the Second Injury Fund. ***The Commission must first determine the degree of disability from the last injury alone***. Consequently, preexisting disabilities are not relevant until this determination is made. If the primary injury standing alone rendered [Claimant] permanently and totally disabled, then the Second Injury Fund has no liability and [Employer] is responsible for all of the compensation.

***Payne v. Treasurer of State, Custodian of Second Injury Fund***, 417 S.W.3d 834, 847 (Mo.App. S.D. 2014) (internal quotations and citations omitted) (alternations in original) (emphasis in original).

SIF argues "by ignoring the relevant medical and vocational opinions regarding the effects of the primary injury in isolation before assessing any Fund liability, the Commission has erred[.]" However, this argument is not supported by the record as the Final Award makes it clear the Commission followed the law in determining SIF liability, and considered all of the medical and vocational opinions regarding the primary injury. First, the Commission correctly cited the test for finding SIF liability under section 287.220.1, and noted in its Final Award that SIF "is not liable if the last injury alone caused [Brandenburg] to be permanently and totally disabled."

Second, the Commission's Final Award specifically discusses both Ms. Shea and Mr. England's opinions, along with the basis for their opinions. The Commission noted Mr. England opined that Brandenburg was permanently and totally disabled due to the primary injury in isolation. Despite his opinion, the Commission found Mr. England's opinions were not credible.

11

It is the job of the Commission to sort through and resolve conflicts in evidence and "*when the evidence before an administrative body would warrant either of two opposed findings*, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding." **Riley v. City of Liberty**, 404 S.W.3d 434, 441 (Mo.App. W.D. 2013) (internal quotation and citation omitted) (emphasis in original). It is the role of the Commission to make credibility determinations between medical opinions. *Id.* at 442.

With respect to Ms. Shea, her deposition testimony and report were admitted in evidence before the Commission. Ms. Shea's report opined Brandenburg was unemployable because (1) of his pain level with activity, (2) the narcotic medication he took for pain, (3) he could not return to any previous work, (4) there were no jobs which met the physical criteria given Brandenburg's complaints and limitations, (5) his skills did not transfer to any physically tolerable work, and (6) his seizure disorder and medications would provide a disincentive for any typical prospective employer. The Commission's Final Award noted Ms. Shea opined that Brandenburg was unemployable in the regular work force of the national labor market. The SIF argues the Final Award "does not include the pivotal question and answer of Ms. Shea wherein [she] states [Brandenburg] could not do any work activities for a job in the regular workforce based solely on [Brandenburg's] complaints and disabilities from the primary injury alone[.]"

> Employability is held to be a matter within the [C]ommission's expertise. The extent and percentage of disability is a finding of fact within the special province of the Industrial Commission. As a result, in determining the degree of a claimant's disability, the Commission need not rely exclusively on the testimony of medical experts; rather, it may consider all the evidence and the reasonable inferences drawn from that evidence.

**Schussler v. Treasurer of the State of Missouri-Custodian of Second Injury Fund**, 393 S.W.3d 90, 96 (Mo.App. W.D. 2012) (internal quotations and citations omitted).

Although SIF argues the Commission did not include the "pivotal question and answer" testimony from Ms. Shea, the Commission is free to believe or disbelieve testimony, "even if the testimony is internally inconsistent." *Id.* The opinion of Ms. Shea noted in the Commission's Final Award is that Brandenburg was unemployable in the regular work force. We do not specifically find Ms. Shea's testimony was inconsistent with this opinion, but rather note SIF's position ignores Ms. Shea's qualification of her testimony that she evaluates a person from "a rehab standpoint, whether the person is employable or not." Regardless, the Commission is free to believe or disbelieve testimony.

With respect to the question of whether Brandenburg was permanently and totally disabled due to the last injury alone, the Commission sorted through the medical and vocational opinion evidence. Contrary to SIF's complaint, the Commission *specifically mentioned* Mr. England's testimony regarding headaches, seizures, blackout spells, neck stiffness, high pain levels, decreased attention span, and panic attacks. However, there was conflicting testimony from Dr. Levy, who opined Brandenburg suffered permanent *partial* disability due to the primary work injury. We defer to the Commission's choice between competing medical opinions, as it was supported by competent and substantial evidence. *Gregory v. Detroit Tool & Engineering*, 266 S.W.3d 844, 846 (Mo.App. S.D. 2008). We cannot and will not substitute our view of witness credibility and conflicting evidence for that of the Commission's view. *See Dwyer v. Federal Exp. Corp.*, 353 S.W.3d 392, 395 (Mo.App. S.D. 2011).

The Commission's finding that Brandenburg suffered a 60% permanent partial disability as a result of the primary work injury was based on substantial and competent evidence in the record. We further find there was competent and substantial evidence, based upon the whole record, supporting the Commission's finding that Brandenburg is permanently and totally disabled as a result of a combination of his primary injuries and pre-existing injuries, thereby

13

resulting in SIF liability for permanent total disability benefits. For these reasons, SIF's sole point is denied.

We affirm the Commission's award.


WILLIAM W. FRANCIS, JR., C.J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. - Concurs

DANIEL E. SCOTT, J. - Concurs