

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| CITY OF COLUMBIA, | ) | |
| | ) | |
| Appellant, | ) | WD79225 |
| | ) | |
| v. | ) | OPINION FILED: August 23, 2016 |
| | ) | |
| WILLIAM PALMER, | ) | |
| | ) | |
| Respondent, | ) | |
| and | ) | |
| | ) | |
| TREASURER OF THE STATE OF | ) | |
| MISSOURI - CUSTODIAN OF THE | ) | |
| SECOND INJURY FUND, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Labor and Industrial Relations Commission**

Before Division Two: Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

The City of Columbia ("City") appeals the decision of the Labor and Industrial

Relations Commission ("Commission") awarding benefits because the City's employee,

William Palmer ("Palmer"), was permanently and totally disabled due only to a

workplace injury he suffered after being pinned between a trash truck and a pole while at work. Finding no error, we affirm.

**Factual and Procedural Background**

Palmer was employed by the City as a Refuse Collector I for 38 years, except for a short period of time during which he worked as a Refuse Collector II. As a Refuse Collector I, Palmer walked between residences or rode the trash truck to the next stop, picked up trash from residential curbsides, and threw the trash into the trash truck.

On June 2, 2011, Palmer was riding on the back of a trash truck when the driver reversed and pinned him between the truck and a pole. A lever on the truck pierced and crushed Palmer's left shoulder ("Injury"). The parties stipulate that Palmer's Injury arose out of the course and scope of his employment.

Dr. David Volgas ("Dr. Volgas") performed surgery on Palmer's left arm and debrided portions of the deltoid, bicep, and brachialis muscles. Dr. Volgas noted that Palmer lacerated his bicep and brachialis muscles, and that he did not expect them to return to function. Dr. Volgas prescribed physical therapy to preserve as much range of motion as possible. Palmer participated in most of the ordered therapy though other medical issues caused him to miss some scheduled sessions. Dr. Volgas released Palmer on August 10, 2011. He noted significant limitation in Palmer's range of motion and opined that Palmer could do a sedentary job, but only if he used his left arm directly in front of him. Dr. Volgas did not think Palmer could do repetitive work with his left arm, even in front of his body.

2

At the City's request, Dr. Kevin Komes ("Dr. Komes") evaluated Palmer on August 17, 2011. Dr. Komes concluded that there was no evidence of nerve damage and that Palmer was at maximum medical improvement ("MMI"). He rated Palmer's disability at 70% permanent partial disability of the left shoulder. He also imposed the following work restrictions: no left arm use except in front of and within 40 centimeters of the body; no prolonged forceful grasping with the left hand; no lifting or carrying with the left arm; and no tasks above the waist.

On May 9, 2012, Palmer filed a claim for workers' compensation benefits. During a hearing before an Administrative Law Judge ("ALJ"), Palmer testified and provided his medical and school records. Deposition testimony and narrative reports were also received in evidence from Dr. David Volarich ("Dr. Volarich"), Dr. Russell Cantrell ("Dr. Cantrell"), Dr. Michael Nogalski ("Dr. Nogalski"), Gary Weimholt ("Weimholt"), and James England ("England").

Palmer testified that he did not return to work after his injury. He testified that he uses his left arm as little as possible, that he cannot raise his left arm all the way up, and that he has to lean in with his body to grab things rather than reach with his left arm. Palmer reported difficulty dressing, and that repetitive motion strains his left arm. Palmer has no pain in his left arm so long as he does not use the arm. Palmer is restricted to lifting 5-7 pounds with his left arm and is advised to not reach out to pick up objects. If he holds something with his left hand, he has to keep it close to his body.

Palmer discussed prior injuries to his right shoulder and to both ankles, and an arthritic condition in his knees, all of which had been successfully treated. Palmer denied

3

any permanent restrictions before his Injury, and testified that none of his prior injuries had effected how he performed his job. Palmer is 61 years old with a borderline IQ. Palmer has a 12th grade education but was in Special Education classes throughout the majority of his schooling. Palmer has always lived in his parents' home, and though he can drive, he has difficulty with directions in unfamiliar areas.

Dr. Volarich evaluated Palmer on November 29, 2012, at Palmer's request. Dr. Volarich observed that Palmer had significant loss of range of motion, atrophy, weakness, and contractures in his left arm. Dr. Volvarich determined that Palmer had suffered a severe laceration and crush injury that required the removal of the entire biceps muscle, the brachial muscle, and 10% of the deltoid muscle. Dr. Volarich rated Palmer's disability at 80% permanent partial disability. Dr. Volarich recommended that Palmer only use his left arm for activities of daily living and that he avoid lifting, reaching, or carrying with his left arm. Dr. Volarich assigned a permanent partial disability rating to each of Palmer's preexisting conditions as follows: 20% of the right shoulder, 15% of each knee, 25% of the left ankle, and 15% of the right ankle. However, Dr. Volarich did not believe that Palmer required any restrictions for these injuries prior to the Injury in June 2011. Dr. Volarich thus opined that Palmer was permanently and totally disabled based on his June 2, 2011 left shoulder injury alone.

Dr. Cantrell evaluated Palmer on April 29, 2013, at the City's request. At first, Dr. Cantrell found that Palmer was not at MMI, and ordered further diagnostic testing and an orthopedic evaluation. Ultimately, Dr. Cantrell found that Palmer had reached MMI, and opined that he had sustained a 30% permanent partial disability of the left shoulder. Dr.

4

Cantrell recommended the following permanent restrictions: no lifting greater than 10 pounds with the left arm; no lifting greater than 25 pounds with both arms; and no work at the level of or above the shoulder. Dr. Cantrell found no reason to assign any restrictions to Palmer's previous medical conditions. Dr. Cantrell believed that Palmer could work at a sedentary to light demand level.

Dr. Nogalski examined Palmer on December 2, 2013, at the City's request. Dr. Nogalski diagnosed Palmer with a complete transection of his coracobrachalis and the short head of his biceps, and damage to his pectoralis major and deltoid. He assigned 30% permanent partial disability to Palmer's left shoulder. Dr. Nogalski imposed the following permanent restrictions on Palmer: no reaching beyond 40 centimeters in front of the body; no lifting more than 5 pounds with the left arm; and no use of the left arm over chest level within 40 centimeter range. Dr. Nogalski did not identify any permanent restriction related to Palmer's prior medical conditions. Dr. Nogalski felt that Palmer was not totally disabled and that he could compete for jobs such as a delivery man or courier.

Weimholt performed a vocational assessment of Palmer on December 6, 2013, at Palmer's request. He determined that Palmer has a total loss of access to the open, competitive labor market. Weimholt opined that Palmer's left shoulder restrictions, work history, limited reading and math skills, and lack of transferable job skills resulted in a total disability. He did not believe Palmer was a candidate for any type of retraining. Weimholt testified that Palmer's left shoulder injury alone was sufficient to take him out of the labor market and that he did not have any restrictions or accommodations for his previous injuries.

5

At the City's request, England performed a vocational assessment. England concluded that Palmer was not totally disabled. He believed that while Palmer could not return to his former job, his restrictions would not prevent him from alternative work. England acknowledged that Palmer denied any problems with work associated with his prior injuries.

The ALJ found that "the evidence from [Palmer's] testimony and expert witnesses shows that [Palmer] is permanently and totally disabled and that the permanent total disability is as a result of his left shoulder injury alone," thereby eliminating any Second Injury Fund liability. The ALJ ordered the City to pay weekly permanent total disability benefits for the remainder of Palmer's life and to provide future narcotic or non-narcotic pain relievers and muscle relaxants.

The City appealed the ALJ's award to the Commission. On November 3, 2015, the Commission affirmed the ALJ's award and incorporated the ALJ's findings.

The City timely filed this appeal.

### Standard of Review

We may modify, reverse, remand for rehearing, or set aside the award of the Commission only if we determine that the Commission acted without or in excess of its powers, that the award was procured by fraud, that the facts found by the Commission do not support the award, or that there was not sufficient competent evidence to warrant making the award. Section 287.495.1.[1] "Where . . . the Commission affirms and

---

[1] All statutory references to Chapter 287 are the version enacted by the legislature in 2005 unless otherwise indicated.

6

incorporates the ALJ's decision in its award, we examine the ALJ's findings as adopted by the Commission." *Kolar v. First Student, Inc.*, 470 S.W.3d 770, 774-775 (Mo. App. E.D. 2015).

"We review the whole record to determine whether there is sufficient competent and substantial evidence to support the award or if the award is contrary to the overwhelming weight of the evidence." *Gleason v. Treasurer of State of Missouri - Custodian of Second Injury Fund*, 455 S.W.3d 494, 497 (Mo. App. W.D. 2015) (quotation omitted). "'This Court defers to the Commission's factual findings and recognizes that it is the Commission's function to determine credibility of witnesses.'" *Riley v. City of Liberty*, 404 S.W.3d 434, 439 (Mo. App. W.D. 2013) (quoting *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012)). "'This Court may not substitute its judgment on the evidence, and when the evidence before an administrative body would warrant either of two opposing findings, the reviewing court is bound by the administrative determination, and it is irrelevant that there is supportive evidence for the contrary finding.'" *Riley*, 404 S.W.3d at 439 (quoting *Hornbeck*, 370 S.W.3d at 629). "The Commission's determinations of law, however, are reviewed independently." *Gleason*, 455 S.W.3d at 497.

## Analysis

The City raises five points on appeal. It argues in Point One that the Commission erred by not first determining the percentage of permanent disability from the Injury alone. The City argues in Point Two that the Commission erred in awarding more than 232 weeks of compensation to Palmer because he suffered a scheduled loss to his left arm

7

for which compensation is capped by section 287.190. The City argues in Point Three that the Commission erred in finding Palmer permanently and totally disabled because the conclusion was not supported by competent and substantial evidence. The City alleges in Point Four that the Commission erred in finding that Palmer was permanently and totally disabled due to the Injury alone because Palmer had pre-existing conditions that were never addressed. Finally, in Point Five, the City claims that the Commission erred in ordering future medical payments because there is no competent and substantial evidence that future medical treatment is reasonably required.

Resolution of the City's Points One, Two, and Four on appeal depend first on whether we agree with the Commission's determination that Palmer sustained a permanent total disability, the subject of Point Three on appeal. We begin our discussion, therefore, with an analysis of Point Three.

The City argues in Point Three that the Commission's conclusion that Palmer is permanently and totally disabled is not supported by competent and substantial evidence. "The test for permanent total disability is whether, given the claimant's situation and condition, he is competent to compete in the open labor market." *Brown v. Treasurer of Missouri*, 795 S.W.2d 479, 483 (Mo. App. E.D. 1990). "Total disability means the inability to return to any reasonable or normal employment, it does not require that the employee be completely inactive or inert." *Id.*

The City claims that the Commission's determination that Palmer is permanently and totally disabled was against the overwhelming weight of the evidence because the decision was based solely on the opinions of Palmer's experts, Dr. Volarich and

8

Weimholt, though neither opinion can be relied on. The City contends that Dr. Volarich's opinion is unreliable because he erroneously believed that Palmer's biceps and brachialis muscles and been completely destroyed and removed. The City contends that Weimholt's opinion is unreliable because he had an erroneous understanding of Palmer's employment history with the City.

Even assuming Dr. Volarich's belief about the remaining physiology of Palmer's left arm muscles following the Injury was mistaken or overstated, the Commission did not rely on that belief to conclude that Palmer suffered a permanent total disability. In fact, the Commission made no mention of Dr. Volarich's physiological assessment of Palmer's left arm. The Commission instead relied on Dr. Volarich's objective assessment of the physical limitations Palmer was experiencing as a result of the Injury--limitations as to which none of the expert medical witnesses expressed any material disagreement. Though the medical evidence differed about what remained of Palmer's left arm muscles, the uncontested evidence was that Palmer suffers severe limitations in his ability to use his left arm. In fact, as the Commission noted, the restrictions imposed on Palmer by Dr. Volarich, (and by Palmer's initial treating doctor, Dr. Volgas), are virtually indistinguishable from those imposed by the City's expert, Dr. Nogalski, the expert who was most critical of Dr. Volarich's characterization of the extent of Palmer's left arm injury. It is a red herring that Dr. Volarich may have harbored a misunderstanding about the extent to which certain muscles in Palmer's left arm had been removed when his ultimate conclusion about the limitations and restrictions Palmer must now live with are effectively not in dispute.

9

Though Dr. Cantrell and Dr. Nogalski opined that Palmer's physical limitations may have been contributed to by not working hard enough at physical therapy, the Commission expressly found that this criticism "ring[s] quite hollow" given both doctor's acknowledgement that other medical issues prevented Palmer from participating fully in the therapy originally ordered by Dr. Volgas. The Commission also found that Palmer's participation in physical therapy has no "bearing on [Palmer's] permanent disability status."

In short, the Commission was free to accept the opinion of Dr. Volarich that Palmer was permanently and totally disabled, and to reject the contrary opinions of Dr. Cantrell and Dr. Nogalski. "'This Court may not substitute its judgment on the evidence.'" *Riley*, 404 S.W.3d at 439 (quoting *Hornbeck*, 370 S.W.3d at 629.

The City also argues that the Commission erred in relying on Weimholt's opinion because he misrepresented that Palmer's work history with the City consisted predominantly of picking up trash and only briefly working as a driver. We fail to see the logic in this argument. Regardless Palmer's work history with the City, as the Commission found, "total disability" is measured by "whether an employer can reasonably be expected to hire the employee, given his [] *present* physical condition, and reasonably expect the employee to successfully perform the work." *Knisley v. Charleswood Corp.*, 211 S.W.3d 629, 635 (Mo. App. E.D. 2007). The Commission accepted Weimholt's testimony that Palmer was not a candidate for retraining and was permanently and totally disabled, and rejected the competing opinion offered by the City's expert, England, that Palmer could find sedentary or very light work. On this latter

point, the Commission found that England's opinion was premised on Palmer's pleasant personality, when "the plain truth is that… [Palmer] simply cannot perform a job to any employer's satisfaction."

Undeterred, the City relies on *Kleithermes v. ABB Power T&D*, 264 S.W.3d 626, 637 (Mo. App. W.D. 2008) to argue that this Court is not required to defer to the Commission's factual findings because all expert testimony was offered through depositions and reports, and this Court is as capable of reading the depositions and reports as the Commission. *Kleithermes* does not stand for the broad proposition argued by the City, a proposition that is in direct and irreconcilable conflict with our settled standard of review. Rather, *Kleithermes* simply and narrowly held on unusual facts that in the face of competing evidence offered through reports and depositions about the causal relationship between a workplace injury and the immediate onset of uncontrollable atrial fibrillation, the Commission was not free to accept a medical opinion discounting causation that was plainly not scientifically supportable. *Id*. at 637-38.

After weighing the evidence, the Commission concluded that Palmer "made an extremely compelling case for permanent total disability." The Commission's finding is supported by substantial, competent evidence on the record as whole.

Point Three is denied.

In Point One the City argues that the Commission erred in not first determining the percentage of permanent disability resulting from the Injury. This argument is without merit. It is true that "in deciding whether the [Second Injury] Fund is liable, the first assessment is the degree of disability from *the last injury considered alone*." *ABB Power*

11

*T&D Co. v. Kempker*, 236 S.W.3d 43, 50 (Mo. App. W.D. 2007) (emphasis in original). That is precisely what the Commission did, however, in determining that the degree of disability sustained by Palmer from his Injury alone was a permanent total disability. "If the last injury in and of itself resulted in the employee's permanent, total disability, then the Fund has no liability, and the employer is responsible for the entire amount of compensation." *Id.* Because the Commission found that Palmer's permanent and total disability was due solely to the Injury, it assessed no responsibility to the Second Injury Fund. The steps otherwise required to determine the extent of the Second Injury Fund's liability are not applicable.

Point One is denied.

The City alleges in Point Two that the Commission erred in awarding more than 232 weeks of compensation, citing section 287.190. Section 287.190 is the schedule of losses for permanent partial disability. Because the Injury rendered Palmer permanently and totally disabled, the schedule of losses for permanent partial disability is irrelevant.

Point Two is denied.

In Point Four the City argues that the Commission erred in finding that Palmer's permanent and total disability was based solely on the Injury because pre-existing conditions were never addressed. The City argues that if Palmer is permanently and totally disabled, then it was error not to consider Palmer's conceded pre-existing injuries in combination with the Injury to assess liability to the Second Injury Fund.

The fallacy in the City's argument is in its failure to address the evidence. Palmer discussed his prior injuries, but reported that all had been successfully treated, and that he

12

had no restrictions related to those injuries at the time of the Injury. Though Dr. Volarich ascribed a permanent partial disability rating to each of Palmer's pre-existing injuries, he expressly found that Palmer did not require any restrictions for these injuries before June 2011, that Palmer was permanently and totally disabled based on the Injury alone, and that Palmer would still be working if not for the Injury. The Second Injury Fund has no liability for permanent total disability unless a claimant has a permanent partial disability *at the time of the work-related injury* giving rise to a claim, **and** the pre-existing permanent partial disability was of such seriousness as to constitute a hindrance or obstacle to the claimant's employment. Section 287.220.2. There was no evidence from any source that Palmer's pre-existing injuries persisted at the time of the Injury or constituted a hindrance or obstacle to Palmer's employment. In fact, Dr. Volarich, Dr. Cantrell, and Dr. Nogalski all agreed that Palmer had no restrictions related to prior medical conditions or injuries.

Point Four is denied.

Finally, in Point Five the City argues that the Commission erred in ordering it to provide future medical treatment in the form of pain medication and muscle relaxants because there exists no competent and substantial evidence that this treatment is reasonably required to cure and relieve Palmer from the effects of the Injury because he has reached his MMI and currently has no pain.

"In addition to all other compensation paid to the employee under this section, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment . . . as may reasonably be required after the injury or

13

disability, to cure and relieve from the effects of the injury." Section 287.140.1. A claimant "need not present 'conclusive evidence'" that future medical treatment is needed to be entitled to an award of future medical benefits." *Greer v. Sysco Food Services*, 475 S.W.3d 655, 673 (Mo. banc 2015). Instead, a claimant "needs only to show a reasonable probability that the future treatment is necessary because of his work related injury." *Id.* "Future medical care should not be denied simply because an employee may have achieved maximum medical improvement." *Id.* Also, "future medical treatment should not be denied merely because it has not yet been prescribed or recommended as of the date of a workers' compensation hearing." *Mathia v. Contract Freighters, Inc.*, 929 S.W.2d 271, 277 (Mo. App. S.D. 1996).

Palmer's MMI and the fact he has not yet been prescribed narcotic or non-narcotic pain medication or muscle relaxants afford no basis to *per se* deny him an award of future medical benefits. It is reasonable to conclude that Palmer may need future pain medication or muscle relaxants given the severity of his injury, the limitations on his movements, the strain he feels from repetitive motion, and the recommendation for future pain medication by Dr. Volarich. The Commission did not err in ordering the City to provide future medical treatment to Palmer.

Point Five is denied.

## Conclusion

The Commission's award is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur